# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE.**     **2. PLEASE TYPE OR PRINT.**     **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| The Andy Warhol Foundation for the Visual Arts, Inc.<br><br>v.<br><br>Lynn Goldsmith and Lynn Goldsmith, Ltd. | **S.D.N.Y.** | Hon. John G. Koeltl |

| | Date the Order or Judgment Appealed from was Entered on the Docket:<br>**July 15, 2019** | District Court Docket No.:<br>**17-cv-2532** |
|---|---|---|
| | Date the Notice of Appeal was Filed:<br>**August 7, 2019** | Is this a Cross Appeal?<br>Yes   ✓ No |

| **Attorney(s) for Appellant(s):**<br>✓ Plaintiff<br>✓ Defendant | Counsel's Name:     Address:     Telephone No.:     Fax No.:     E-mail:<br><br>Thomas G. Hentoff<br>Williams & Connolly LLP, 725 Twelfth Street NW, Washington, DC 20005<br>Phone: (202) 434-5804  |  Fax: (202) 824-4190  |  Email: thentoff@wc.com |
|---|---|

| **Attorney(s) for Appellee(s):**<br>✓ Plaintiff<br>✓ Defendant | Counsel's Name:     Address:     Telephone No.:     Fax No.:     E-mail:<br><br>Luke Nikas<br>Quinn Emanuel Urquhart & Sullivan, LLP, Madison Avenue, 22nd Floor, New York, NY 10010<br>Phone: (212) 849-7228   |   Fax: (212) 849-7100   |   Email: lukenikas@quinnemanuel.com |
|---|---|

| Has Transcript Been Prepared?<br><br>Yes | Approx. Number of Transcript Pages:<br><br>45 | Number of Exhibits Appended to Transcript:<br><br>0 | Has this matter been before this Circuit previously?     Yes   ✓ No<br><br>If Yes, provide the following:<br><br>Case Name:<br><br>2d Cir. Docket No.:          Reporter Citation: (i.e., F.3d or Fed. App.) |
|---|---|---|---|

*ADDENDUM "A"*: COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

*ADDENDUM "B"*: COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

### PART A:  JURISDICTION

| 1. Federal Jurisdiction | | 2. Appellate Jurisdiction | |
|---|---|---|---|
| U.S. a party | Diversity | ✓ Final Decision | Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b)) |
| ✓ Federal question (U.S. not a party) | Other (specify): _____ | Interlocutory Decision Appealable As of Right | Other (specify): _____ |

**IMPORTANT.  COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

## PART B: DISTRICT COURT DISPOSITION   (Check as many as apply)

| 1. Stage of Proceedings | 2. Type of Judgment/Order Appealed | | 3. Relief |
|---|---|---|---|
| ✓ Pre-trial<br>During trial<br>After trial | Default judgment<br>Dismissal/FRCP 12(b)(1)<br>  lack of subj. matter juris.<br>Dismissal/FRCP 12(b)(6)<br>  failure to state a claim<br>Dismissal/28 U.S.C. § 1915(e)(2)<br>  frivolous complaint<br>Dismissal/28 U.S.C. § 1915(e)(2)<br>  other dismissal | Dismissal/other jurisdiction<br>Dismissal/merit<br>Judgment / Decision of the Court<br>✓ Summary judgment<br>Declaratory judgment<br>Jury verdict<br>Judgment NOV<br>Directed verdict<br>Other (specify): | ✓ Damages:<br>  ✓ Sought: $ _____<br>    Granted: $ _____<br>  ✓ Denied: $ _____<br><br>✓ Injunctions:<br>  Preliminary<br>  Permanent<br>  ✓ Denied |

## PART C: NATURE OF SUIT   (Check as many as apply)

| 1. Federal Statutes | | | 2. Torts | 3. Contracts | 4. Prisoner Petitions |
|---|---|---|---|---|---|
| Antitrust<br>Bankruptcy<br>Banks/Banking<br>Civil Rights<br>Commerce,<br>Energy<br>Commodities<br>✓ Other (specify): | Communications<br>Consumer Protection<br>✓ Copyright ☐ Patent<br>Trademark<br>Election<br>Soc. Security<br>Environmental<br>Declaratory Judgment Act, 28 U.S.C. 2201 | Freedom of Information Act<br>Immigration<br>Labor<br>OSHA<br>Securities<br>Tax | Admiralty/<br>Maritime<br>Assault /<br>Defamation<br>FELA<br>Products Liability<br>Other (Specify): | Admiralty/<br>Maritime<br>Arbitration<br>Commercial<br>Employment<br>Insurance<br>Negotiable<br>instruments<br>Other Specify | Civil Rights<br>Habeas Corpus<br>Mandamus<br>Parole<br>Vacate Sentence<br>Other |

| 5. Other | 6. General | 7. Will appeal raise constitutional issue(s)? |
|---|---|---|
| Forfeiture/Penalty<br>Real Property<br>Treaty (specify): _____<br>Other (specify): _____ | Arbitration<br>Attorney Disqualification<br>Class Action<br>Counsel Fees<br>Shareholder Derivative<br>Transfer | Yes    ✓ No<br><br>Will appeal raise a matter of first impression?<br><br>Yes    ✓ No |

1.  Is any matter relative to this appeal still pending below?  ✓ Yes, specify:  Motion for costs and attorneys' fees      No

2.  To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

    (A)    Arises from substantially the same case or controversy as this appeal?    Yes    ✓ No

    (B)    Involves an issue that is substantially similar or related to an issue in this appeal?    Yes    ✓ No

If yes, state whether   "A," or   "B," or  both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| | | | |

Name of Appellant:

| Date: | Signature of Counsel of Record: |
|---|---|
| August 21, 2019 | /s/ Thomas G. Hentoff |

# NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

  1.  Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.

  2.  File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.

  3.  Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**<u>PLEASE NOTE:</u>  IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.**  *SEE* LOCAL RULE 12.1.

# ADDENDUM A

1. <u>Brief Description of Nature of the Action</u>

Lynn Goldsmith is a commercial, editorial, and fine art photographer known for creating images of rock musicians and other celebrities. In 1981, she made a series of photos of the singer Prince in her New York City studio. Three years later, her photo agency licensed one of those images to *Vanity Fair* magazine for use as an artist's reference for an illustration to be published in the November 1984 issue only. The license specified: "No other usage rights granted." *Vanity Fair* commissioned the artist Andy Warhol to make the illustration of Prince. All told, Warhol created 16 paintings, drawings, and screen prints on paper from the original black-and-white Goldsmith photo. Since Warhol's death in 1987, the Andy Warhol Foundation for the Visual Arts, Inc. has sold and/or commercially licensed works in the artist's Prince series.

The Foundation, plaintiff-counter defendant-appellee here, brought this civil action under the Copyright Act, 17 U.S.C. § 101 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §2201 *et seq.*, asserting that the 16 works in Warhol's Prince series do not infringe the copyright in Goldsmith's photo or else constitute fair use. Defendants-counter plaintiffs-appellants Lynn Goldsmith and Lynn Goldsmith, Ltd. (together, "Goldsmith") brought an

amended counterclaim for infringement. Goldsmith sought damages and a permanent injunction barring the Foundation from reproducing, modifying, selling, offering to sell, publishing, displaying, or preparing derivative works from Warhol's Prince series.

The parties filed cross-motions for summary judgment.

2.     Result Below

On July 1, 2019, the district court (Hon. John G. Koeltl) issued an opinion holding that the works in Warhol's Prince series are protected by the fair use defense under 17 U.S.C. § 107. On July 15, 2019, the district court entered judgment and an order granting the Foundation's motion for summary judgment, denying Goldsmith's motion for summary judgment, and dismissing Goldsmith's amended counterclaim for infringement. The district court also stayed any application for costs and attorney's fees until 14 days after the mandate issued in any appeal or the time to appeal had expired.

3.     Notice of Appeal and District Court Docket Sheet

Goldsmith filed a notice of appeal on August 7, 2019. A copy of the notice of appeal is attached here as Exhibit 1. A current copy of the district court docket sheet is attached here as Exhibit 2.

4.    <u>Relevant Opinions and Orders</u>

A copy of the following opinions and orders of the district court are attached here as Exhibit 3: (a) the district court's judgment and order dated July 15, 2019, granting the Foundation's motion for summary judgment, denying Goldsmith's motion for summary judgment, and dismissing Goldsmith's amended counterclaim for infringement and (b) the district court's opinion and order dated July 1, 2019, holding that the works in Warhol's Prince series are protected by the fair use defense.

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

THE ANDY WARHOL FOUNDATION FOR THE VISUAL ARTS, INC.

_____

(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

LYNN GOLDSMITH AND LYNN GOLDSMITH, LTD.

_____

_____

(List the full name(s) of the defendant(s)/respondent(s).)

1:17 CV 02532 ( JGK )(        )

## NOTICE OF APPEAL

Notice is hereby given that the following parties:   LYNN GOLDSMITH AND LYNN GOLDSMITH, LTD.

_____

(list the names of all parties who are filing an appeal)

in the above-named case appeal to the United States Court of Appeals for the Second Circuit

from the   ☒ judgment   ☒ order   entered on:   July 15, 2019

(date that judgment or order was entered on docket)

that:

granted The Andy Warhol Foundation for the Visual Arts, Inc.'s motion for summary judgment, denied Lynn

Goldsmith's and Lynn Goldsmith Ltd.'s motion for summary judgment, and dismissed Lynn Goldsmith's amended counterclaim.

(If the appeal is from an order, provide a brief description above of the decision in the order.)

August 7, 2019
_____

Dated

Werbin, Barry
_____

Name (Last, First, MI)

Signature

2 Park Avenue          New York          New York          10016
_____

Address                City              State             Zip Code

212.592.1418                             bwerbin@herrick.com
_____

Telephone Number                         E-mail Address (if available)

_____

* Each party filing the appeal must date and sign the Notice of Appeal and provide his or her mailing address and telephone
number, EXCEPT that a signer of a pro se notice of appeal may sign for his or her spouse and minor children if they are parties
to the case. Fed. R. App. P. 3(c)(2). Attach additional sheets of paper as necessary.

Rev. 12/23/13

# EXHIBIT 2

CLOSED,APPEAL,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:17–cv–02532–JGK

The Andy Warhol Foundation For The Visual Arts, Inc. v. Goldsmith et al
Assigned to: Judge John G. Koeltl
Cause: 17:101 Copyright Infringement

Date Filed: 04/07/2017
Date Terminated: 07/15/2019
Jury Demand: Both
Nature of Suit: 820 Copyright
Jurisdiction: Federal Question

**Plaintiff**

**The Andy Warhol Foundation For The Visual Arts, Inc.**

represented by **Daniel Rickert Koffmann**
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849–7617
Fax: (212) 849–7100
Email: danielkoffmann@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Maaren Alia Shah**
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue
22nd Floor
New York, NY 10010
(212) 849–7329
Fax: (212) 849–7100
Email: maarenchoksi@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Luke William Nikas**
Quinn Emanuel Urquhart & Sullivan (NYC)
51 Madison Avenue
New York, NY 10010
212–849–7000
Fax: 212–849–7100
Email: lukenikas@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Lynn Goldsmith**

represented by **Barry Werbin**
Herrick, Feinstein LLP (NYC)
2 Park Avenue
New York, NY 10016
(212) 592–1418
Fax: (212) 592–1500
Email: bwerbin@herrick.com
*ATTORNEY TO BE NOTICED*

**Gabrielle Casal Wilson**
Herrick, Feinstein LLP (NYC)
2 Park Avenue
New York, NY 10016
(212)–592–1615
Fax: (212)–545–2337
Email: gwilson@herrick.com
*ATTORNEY TO BE NOTICED*

**Joel Lawrence Hecker**
Law Offices of Joel L. Hecker
230 Park Avenue, Suite 660
New York, NY 10169
212–481–1850
Email: heckeresq@aol.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lynn Goldsmith, Ltd.**                    represented by   **Barry Werbin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabrielle Casal Wilson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joel Lawrence Hecker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Lynn Goldsmith, Ltd.**                    represented by   **Barry Werbin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabrielle Casal Wilson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joel Lawrence Hecker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Lynn Goldsmith**                          represented by   **Barry Werbin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabrielle Casal Wilson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joel Lawrence Hecker**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**The Andy Warhol Foundation For The Visual Arts, Inc.**   represented by   **Daniel Rickert Koffmann**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Luke William Nikas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Lynn Goldsmith, Ltd.**                    represented by

**Barry Werbin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabrielle Casal Wilson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joel Lawrence Hecker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Lynn Goldsmith**                    represented by  **Barry Werbin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gabrielle Casal Wilson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joel Lawrence Hecker**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**The Andy Warhol Foundation For The**          represented by  **Daniel Rickert Koffmann**
**Visual Arts, Inc.**                                              (See above for address)
*ATTORNEY TO BE NOTICED*

**Luke William Nikas**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/07/2017 | 1 | **FILING ERROR – DUPLICATE DOCKET ENTRY** COMPLAINT against Lynn Goldsmith, Lynn Goldsmith, Ltd.. (Filing Fee $ 400.00, Receipt Number 0208–13520493)Document filed by The Andy Warhol Foundation For The Visual Arts, Inc..(Nikas, Luke) Modified on 4/11/2017 (kl). (Entered: 04/07/2017) |
| 04/07/2017 | 2 | CIVIL COVER SHEET filed. (Nikas, Luke) (Entered: 04/07/2017) |
| 04/07/2017 | 3 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by The Andy Warhol Foundation For The Visual Arts, Inc..(Nikas, Luke) (Entered: 04/07/2017) |
| 04/07/2017 | 4 | REQUEST FOR ISSUANCE OF SUMMONS as to Lynn Goldsmith, Ltd, re: 1 Complaint. Document filed by The Andy Warhol Foundation For The Visual Arts, Inc.. (Nikas, Luke) (Entered: 04/07/2017) |
| 04/07/2017 | 5 | REQUEST FOR ISSUANCE OF SUMMONS as to Lynn Goldsmith, re: 1 Complaint. Document filed by The Andy Warhol Foundation For The Visual Arts, Inc.. (Nikas, Luke) (Entered: 04/07/2017) |
| 04/07/2017 | 6 | COMPLAINT against Lynn Goldsmith, Lynn Goldsmith, Ltd.. Document filed by The Andy Warhol Foundation For The Visual Arts, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Nikas, Luke) (Entered: 04/07/2017) |
| 04/10/2017 |  | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above–entitled action is assigned to Judge John G. Koeltl. Please download and review the Individual Practices of the assigned District Judge, located at http://nysd.uscourts.gov/judges/District. |

| | | Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at http://nysd.uscourts.gov/ecf_filing.php. (kl) (Entered: 04/10/2017) |
|---|---|---|
| 04/10/2017 | | Magistrate Judge Andrew J. Peck is so designated. (kl) (Entered: 04/10/2017) |
| 04/10/2017 | | Case Designated ECF. (kl) (Entered: 04/10/2017) |
| 04/10/2017 | 7 | ELECTRONIC SUMMONS ISSUED as to Lynn Goldsmith, Ltd. (kl) (Entered: 04/10/2017) |
| 04/10/2017 | 8 | ELECTRONIC SUMMONS ISSUED as to Lynn Goldsmith. (kl) (Entered: 04/10/2017) |
| 04/10/2017 | | ***NOTICE TO ATTORNEY TO SUBMIT AO 121 FORM COPYRIGHT. Notice to Attorney Luke William Nikas to submit a completed AO 121 Form Copyright to court for review. Use the event type AO 121 Copyright – Notice of Submission by Attorney found under the event list Other Documents. (kl) (Entered: 04/10/2017) |
| 05/02/2017 | 9 | AFFIDAVIT OF SERVICE of Summons and Complaint. Lynn Goldsmith, Ltd. served on 4/20/2017, answer due 5/11/2017. Service was accepted by Anthony Williams, Authorized Agent. Document filed by The Andy Warhol Foundation For The Visual Arts, Inc.. (Nikas, Luke) (Entered: 05/02/2017) |
| 05/02/2017 | 10 | AFFIDAVIT OF SERVICE of Summons and Complaint. Lynn Goldsmith served on 4/25/2017, answer due 5/16/2017. Service was accepted by Anthony Williams, Co–Worker. Service was made by Mail. Document filed by The Andy Warhol Foundation For The Visual Arts, Inc.. (Nikas, Luke) (Entered: 05/02/2017) |
| 05/08/2017 | 11 | NOTICE OF APPEARANCE by Barry Werbin on behalf of Lynn Goldsmith, Lynn Goldsmith, Ltd.. (Werbin, Barry) (Entered: 05/08/2017) |
| 05/08/2017 | 12 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Lynn Goldsmith, Ltd..(Werbin, Barry) (Entered: 05/08/2017) |
| 05/08/2017 | 13 | NOTICE OF APPEARANCE by Gabrielle Casal Wilson on behalf of Lynn Goldsmith, Lynn Goldsmith, Ltd.. (Wilson, Gabrielle) (Entered: 05/08/2017) |
| 05/09/2017 | 14 | NOTICE OF COURT CONFERENCE: You are directed to appear for a pretrial conference, to be held on Monday, June 19, 2017, in Courtroom 12B, at 4:30pm in front of the Honorable John G. Koeltl. All requests for adjournments must be made in writing to the Court. For any further information, please contact the Court at (212) 805–0107. (ap) (Entered: 05/09/2017) |
| 05/09/2017 | | Set/Reset Hearings: Initial Conference set for 6/19/2017 at 4:30 PM in Courtroom 12B, 500 Pearl Street, New York, NY 10007 before Judge John G. Koeltl. (ap) (Entered: 05/09/2017) |
| 05/10/2017 | 15 | NOTICE OF APPEARANCE by Joel Lawrence Hecker on behalf of Lynn Goldsmith, Lynn Goldsmith, Ltd.. (Hecker, Joel) (Entered: 05/10/2017) |
| 05/10/2017 | 16 | LETTER MOTION for Extension of Time to File Answer addressed to Judge John G. Koeltl., LETTER MOTION to Adjourn Conference addressed to Judge John G. Koeltl. Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd..(Werbin, Barry) (Entered: 05/10/2017) |
| 05/15/2017 | 17 | ORDER granting 16 Letter Motion for Extension of Time to Answer ; granting 16 Letter Motion to Adjourn Conference. 1. Time to respond extended to 6/9/17. 2. Conference adjourned to 7/11/17 at 4:30 P.M. Lynn Goldsmith answer due 6/9/2017; Lynn Goldsmith, Ltd. answer due 6/9/2017(Initial Conference set for 7/11/2017 at 04:30 PM before Judge John G. Koeltl.) (Signed by Judge John G. Koeltl on 5/15/2017) (cf) (Entered: 05/15/2017) |
| 06/09/2017 | 18 | ANSWER to 6 Complaint with JURY DEMAND., COUNTERCLAIM against The Andy Warhol Foundation For The Visual Arts, Inc.. Document filed by Lynn Goldsmith, Ltd., Lynn Goldsmith. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Werbin, Barry) (Entered: 06/09/2017) |

| | | |
|---|---|---|
| 06/30/2017 | 19 | ANSWER to 18 Counterclaim. Document filed by The Andy Warhol Foundation For The Visual Arts, Inc..(Nikas, Luke) (Entered: 06/30/2017) |
| 07/10/2017 | 20 | AMENDED ANSWER to 18 Answer to Complaint, Counterclaim, 6 Complaint with JURY DEMAND., COUNTERCLAIM against The Andy Warhol Foundation For The Visual Arts, Inc.. Document filed by Lynn Goldsmith, Ltd., Lynn Goldsmith. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Werbin, Barry) (Entered: 07/10/2017) |
| 07/11/2017 | | Minute Entry for proceedings held before Judge John G. Koeltl: Scheduling Conference held on 7/11/2017. (Fletcher, Donnie) (Entered: 07/25/2017) |
| 07/12/2017 | 21 | CIVIL CASE MANAGEMENT PLAN AND SCHEDULING ORDER: The parties do not consent to conducting further proceedings before a Magistrate Judge, including motions and trial. 28 U.S.C. 636(c). This case is to be tried to a jury. Fact Discovery due by 1/26/2018. Deposition due by 12/15/2017. Expert Discovery due by 3/30/2018. Unless otherwise ordered by the Court, within 30 days from the date for the completion of discovery, or, if a party has filed a dispositive motion, then within 30 days of a decision resolving the motion, the parties shall submit to the Court for its approval a joint pretrial order prepared in accordance with the Court's Individual Practices and Fed. R. Civ. P. 26(a)(3), together with motions in limine, requests to change, and voir dire requests. Responses and objections are due 7 days thereafter. Best estimate of the length of trial is: 3–5 days. The parties' ready Trial Date is 21 days after submission of the Joint Pre–Trial Order. So Ordered. (Signed by Judge John G. Koeltl on 7/11/2017) (ap) (Entered: 07/12/2017) |
| 07/24/2017 | 22 | ANSWER to 20 Counterclaim. Document filed by The Andy Warhol Foundation For The Visual Arts, Inc..(Nikas, Luke) (Entered: 07/24/2017) |
| 09/12/2017 | 23 | STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER...regarding procedures to be followed that shall govern the handling of confidential material...This Order is not binding on the Court or court personnel. The Court may amend this Order at any time. So Ordered. (Signed by Judge John G. Koeltl on 9/11/17) (yv) (Entered: 09/12/2017) |
| 12/12/2017 | 24 | JOINT LETTER MOTION for Extension of Time to Complete Discovery addressed to Judge John G. Koeltl from Luke Nikas dated December 12, 2017. Document filed by The Andy Warhol Foundation For The Visual Arts, Inc.. (Attachments: # 1 Supplement Civil Case Management Plan And Scheduling Order)(Nikas, Luke) (Entered: 12/12/2017) |
| 12/13/2017 | 25 | ORDER granting 24 Letter Motion for Extension of Time to Complete Discovery. Application granted. The parties should submit a revised scheduling order by 12/20/17. (Signed by Judge John G. Koeltl on 12/13/2017) (mro) (Entered: 12/14/2017) |
| 12/21/2017 | 26 | REVISED CASE MANAGEMENT PLAN AND SCHEDULING ORDER: The parties do not consent to conducting further proceedings before a Magistrate Judge, including motions and trial, under 28 U.S.C. § 636(c). This case is to be tried to a jury. Serve interrogatories by July 22, 2017 (as limited by Southern District Local Rule 33.1). Deposition due by 1/15/2018. The parties must complete their initial disclosures under Fed. R. Civ. P. 26(a)(1) no later than June 29, 2017. Fact Discovery due by 2/26/2018. Serve requests to admit no later than January 22, 2018. Expert Discovery due by 4/30/2018. Every party–proponent that intends to offer expert testimony in respect of a claim–including any counterclaim, cross–claim, or third–party claim– must make the disclosures required by Fed. R. Civ. P. 26(a)(2) by February 28, 2018. Every party–opponent of such claim that intends to offer expert testimony in respect of such claim must make the disclosures required by Fed. R. Civ. P. 26(a)(2) by April 2, 2018. Parties seeking to make dispositive motions should submit a letter to the Court in accordance with Rule 2(B) of the Court's Individual Practices by May 21, 2018. Opposition letters are due May 28, 2018. Counsel for the parties have conferred and their present best estimate of the length of trial is: 3–5 days. So Ordered. (Signed by Judge John G. Koeltl on 12/21/17) (yv) (Entered: 12/21/2017) |
| 01/03/2018 | 27 | NOTICE OF CHANGE OF ADDRESS by Luke William Nikas on behalf of The Andy Warhol Foundation For The Visual Arts, Inc.. New Address: Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Ave, 22nd Floor, New York, NY, 10010, (212) 849–7000. (Nikas, Luke) (Entered: 01/03/2018) |

| | | |
|---|---|---|
| 01/03/2018 | 28 | NOTICE OF APPEARANCE by Daniel Rickert Koffmann on behalf of The Andy Warhol Foundation For The Visual Arts, Inc.. (Koffmann, Daniel) (Entered: 01/03/2018) |
| 03/29/2018 | 29 | JOINT LETTER MOTION for Extension of Time to Complete Discovery addressed to Judge John G. Koeltl dated March 29, 2018. Document filed by The Andy Warhol Foundation For The Visual Arts, Inc.. (Attachments: # 1 Proposed Revised Order)(Nikas, Luke) (Entered: 03/29/2018) |
| 03/29/2018 | 30 | AMENDED CIVIL CASE MANAGEMENT PLAN AND SCHEDULING ORDER granting 29 Letter Motion for Extension of Time to Complete Discovery: The parties do not consent to conducting further proceedings before a Magistrate Judge, including motions and trial. This case is to be tried to a jury. No additional parties may be joined except by an amendment made consistent with Fed. R. Civ. P. 15 or, otherwise, with leave of the Court. A party may amend its pleadings consistent with Fed. R. Civ. P. 15, but may not otherwise amend its pleadings except with leave of the Court. Fact Discovery due by 4/6/2018. Fact Deposition due by 4/16/2018. Expert Discovery due by 6/15/2018. Expert Deposition due by 6/15/2018. Counsel for the parties have conferred and their present best estimate of the length of trial is: 3–5 days. (Signed by Judge John G. Koeltl on 3/29/2018) (jwh) Modified on 5/25/2018 (jwh). (Entered: 03/30/2018) |
| 03/29/2018 | | Set/Reset Deadlines: Expert Discovery due by 6/15/2018. Fact Discovery due by 4/16/2018. (jwh) (Entered: 03/30/2018) |
| 05/11/2018 | 31 | MOTION to Preclude *the Expert Report of Dr. Thomas Crow*. Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd..(Werbin, Barry) (Entered: 05/11/2018) |
| 05/11/2018 | 32 | DECLARATION of Barry Werbin in Support re: 31 MOTION to Preclude *the Expert Report of Dr. Thomas Crow*.. Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Werbin, Barry) (Entered: 05/11/2018) |
| 05/11/2018 | 33 | MEMORANDUM OF LAW in Support re: 31 MOTION to Preclude *the Expert Report of Dr. Thomas Crow*. . Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd.. (Werbin, Barry) (Entered: 05/11/2018) |
| 05/23/2018 | 34 | LETTER addressed to Judge John G. Koeltl from Luke Nikas dated May 23, 2018 re: Holding the Motion to Preclude Expert Report in Abeyance. Document filed by The Andy Warhol Foundation For The Visual Arts, Inc..(Nikas, Luke) (Entered: 05/23/2018) |
| 05/25/2018 | 35 | MEMORANDUM OF LAW in Opposition re: 31 MOTION to Preclude *the Expert Report of Dr. Thomas Crow*. . Document filed by The Andy Warhol Foundation For The Visual Arts, Inc.. (Nikas, Luke) (Entered: 05/25/2018) |
| 05/29/2018 | 36 | JOINT LETTER MOTION for Extension of Time to Complete Discovery *(Expert) and other remaining deadlines* addressed to Judge John G. Koeltl. Document filed by Lynn Goldsmith, Ltd..(Werbin, Barry) (Entered: 05/29/2018) |
| 05/31/2018 | 37 | ORDER granting 36 Letter Motion for Extension of Time to Complete Discovery. Application Granted. Parties should submit a revised scheduling order by June 6, 2018. So Ordered. (Signed by Judge John G. Koeltl on 5/30/18) (yv) (Entered: 05/31/2018) |
| 05/31/2018 | | Set/Reset Deadlines: Expert Discovery due by 6/29/2018. (yv) (Entered: 05/31/2018) |
| 06/01/2018 | 38 | REPLY MEMORANDUM OF LAW in Support re: 31 MOTION to Preclude *the Expert Report of Dr. Thomas Crow*. . Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd.. (Werbin, Barry) (Entered: 06/01/2018) |
| 06/04/2018 | 39 | NOTICE OF APPEARANCE by Maaren Alia Shah on behalf of The Andy Warhol Foundation For The Visual Arts, Inc.. (Shah, Maaren) (Entered: 06/04/2018) |
| 06/06/2018 | 40 | SECOND AMENDED CIVIL CASE MANAGEMENT PLAN AND SCHEDULING ORDER: The parties do not consent to conducting further proceedings before a Magistrate Judge, including motions and trial, under 28 U.S.C. § 636(c). This case is to be tried to a jury. Expert Discovery due by 6/29/2018. Parties seeking to make dispositive motions should submit a letter to the Court in accordance with Rule 2(B) of the Court's Individual Practices by July 6, 2018. Opposition letters are due July 13, |

| | | |
|---|---|---|
| | | 2018. Counsel for the parties have conferred and their present best estimate of the length of trial is: 3–5 days. So Ordered. (Signed by Judge John G. Koeltl on 6/6/18) (yv) (Entered: 06/06/2018) |
| 07/06/2018 | 41 | LETTER MOTION for Conference addressed to Judge John G. Koeltl from Luke Nikas dated July 6, 2018. Document filed by The Andy Warhol Foundation For The Visual Arts, Inc..(Nikas, Luke) (Entered: 07/06/2018) |
| 07/06/2018 | 42 | LETTER MOTION for Leave to File motion for summary judgment addressed to Judge John G. Koeltl. Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd..(Werbin, Barry) (Entered: 07/06/2018) |
| 07/10/2018 | 43 | ORDER, A conference in this matter will be held on Friday, July 13, 2018, at 10:30am. SO ORDERED. (Status Conference set for 7/13/2018 at 10:30 AM before Judge John G. Koeltl.) (Signed by Judge John G. Koeltl on 7/10/18) (yv) (Entered: 07/11/2018) |
| 07/13/2018 | 44 | ORDER: withdrawing without prejudice to renewal 31 Motion to Preclude; terminating 41 Letter Motion for Conference ; granting 42 Letter Motion for Leave to File Document. The defendants' motion to strike the expert report of Dr. Thomas Crow is withdrawn without prejudice to renewal. The Clerk of Court is directed to close the motion at Docket No. 31. The parties' cross–motions for summary judgment are due on September 28, 2018. Oppositions are due October 26, 2018. Replies are due November 16, 2018. For these motions only, the memoranda of law in support of and in opposition to the motions are limited to 10,000 words, and reply memoranda of law are limited to 2,800 words. The Clerk of Court is directed to close the motions at Docket Nos. 41 and 42. SO ORDERED. (Signed by Judge John G. Koeltl on 7/13/2018) (ama) (Entered: 07/13/2018) |
| 07/13/2018 | | Set/Reset Deadlines: Cross Motions due by 9/28/2018. Responses due by 10/26/2018 Replies due by 11/16/2018. (ama) (Entered: 07/13/2018) |
| 07/13/2018 | | Minute Entry for proceedings held before Judge John G. Koeltl: Pre–Motion Conference held on 7/13/2018. (Fletcher, Donnie) (Entered: 08/08/2018) |
| 07/30/2018 | 45 | TRANSCRIPT of Proceedings re: conference held on 7/13/2018 before Judge John G. Koeltl. Court Reporter/Transcriber: Raquel Robles, (212) 805–0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/20/2018. Redacted Transcript Deadline set for 8/30/2018. Release of Transcript Restriction set for 10/29/2018.(McGuirk, Kelly) (Entered: 07/30/2018) |
| 07/30/2018 | 46 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a conference proceeding held on 7/13/18 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 07/30/2018) |
| 09/11/2018 | 47 | JOINT LETTER MOTION for Extension of Time *of the current briefing schedule for the parties' cross–motions for summary judgment* addressed to Judge John G. Koeltl. Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd..(Werbin, Barry) (Entered: 09/11/2018) |
| 09/12/2018 | 48 | ORDER granting 47 Letter Motion for Extension of Time. APPLICATION GRANTED. Motions due by 10/12/2018. (Signed by Judge John G. Koeltl on 9/11/2018) (mro) (Entered: 09/12/2018) |
| 09/12/2018 | | Set/Reset Deadlines: Responses due by 11/12/2018 Replies due by 11/30/2018. (mro) (Entered: 09/12/2018) |
| 10/11/2018 | 49 | JOINT LETTER MOTION to Seal Document *related to cross–motions for summary judgment* addressed to Judge John G. Koeltl. Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd..(Werbin, Barry) (Entered: 10/11/2018) |

| | | |
|---|---|---|
| 10/12/2018 | 50 | ORDER granting 49 Letter Motion to Seal Document. Application Granted. So Ordered. (Signed by Judge John G. Koeltl on 10/11/18) (yv) (Entered: 10/12/2018) |
| 10/12/2018 | 51 | MOTION for Summary Judgment . Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd..(Werbin, Barry) (Entered: 10/12/2018) |
| 10/12/2018 | 52 | RULE 56.1 STATEMENT. Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd.. (Werbin, Barry) (Entered: 10/12/2018) |
| 10/12/2018 | 53 | MEMORANDUM OF LAW in Support re: 51 MOTION for Summary Judgment . . Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd.. (Werbin, Barry) (Entered: 10/12/2018) |
| 10/12/2018 | 54 | MOTION for Summary Judgment . Document filed by The Andy Warhol Foundation For The Visual Arts, Inc..(Nikas, Luke) (Entered: 10/12/2018) |
| 10/12/2018 | 55 | MEMORANDUM OF LAW in Support re: 54 MOTION for Summary Judgment . . Document filed by The Andy Warhol Foundation For The Visual Arts, Inc.. (Nikas, Luke) (Entered: 10/12/2018) |
| 10/12/2018 | 56 | RULE 56.1 STATEMENT. Document filed by The Andy Warhol Foundation For The Visual Arts, Inc.. (Nikas, Luke) (Entered: 10/13/2018) |
| 10/12/2018 | 57 | DECLARATION of Barry Werbin (Part 1 – Exhibits A –Z) in Support re: 51 MOTION for Summary Judgment .. Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W, # 24 Exhibit X, # 25 Exhibit Y, # 26 Exhibit Z)(Werbin, Barry) (Entered: 10/13/2018) |
| 10/13/2018 | 58 | DECLARATION of Barry Werbin (Part 2 – Exhibits AA–ZZ) in Support re: 51 MOTION for Summary Judgment .. Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd.. (Attachments: # 1 Exhibit AA, # 2 Exhibit BB, # 3 Exhibit CC, # 4 Exhibit DD, # 5 Exhibit EE, # 6 Exhibit FF, # 7 Exhibit GG, # 8 Exhibit HH, # 9 Exhibit II, # 10 Exhibit JJ, # 11 Exhibit KK, # 12 Exhibit LL, # 13 Exhibit MM, # 14 Exhibit NN, # 15 Exhibit OO, # 16 Exhibit PP, # 17 Exhibit QQ, # 18 Exhibit RR, # 19 Exhibit SS, # 20 Exhibit TT, # 21 Exhibit UU, # 22 Exhibit VV, # 23 Exhibit WW, # 24 Exhibit XX, # 25 Exhibit YY, # 26 Exhibit ZZ)(Werbin, Barry) (Entered: 10/13/2018) |
| 10/13/2018 | 59 | DECLARATION of Barrry Werbin (Part 3 – Exhibits AAA–PPP) in Support re: 51 MOTION for Summary Judgment .. Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd.. (Attachments: # 1 Exhibit AAA, # 2 Exhibit BBB, # 3 Exhibit CCC, # 4 Exhibit DDD, # 5 Exhibit EEE, # 6 Exhibit FFF, # 7 Exhibit GGG, # 8 Exhibit HHH, # 9 Exhibit III, # 10 Exhibit JJJ, # 11 Exhibit KKK, # 12 Exhibit LLL, # 13 Exhibit MMM, # 14 Exhibit NNN, # 15 Exhibit OOO, # 16 Exhibit PPP)(Werbin, Barry) (Entered: 10/13/2018) |
| 10/13/2018 | 60 | DECLARATION of Luke Nikas in Support re: 54 MOTION for Summary Judgment .. Document filed by The Andy Warhol Foundation For The Visual Arts, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42, # 43 Exhibit 43, # 44 Exhibit 44, # 45 Exhibit 45, # 46 Exhibit 46, # 47 Exhibit 47, # 48 Exhibit 48, # 49 Exhibit 49, # 50 Exhibit 50, # 51 Exhibit 51, # 52 Exhibit 52, # 53 Exhibit 53, # 54 Exhibit 54, # 55 Exhibit 55, # 56 Exhibit 56, # 57 Exhibit 57, # 58 Exhibit 58, # 59 Exhibit 59, # 60 Exhibit 60, # 61 Exhibit 61, # 62 Exhibit 62, # 63 Exhibit 63, # 64 Exhibit 64, # 65 Exhibit 65, # 66 Exhibit 66, # 67 Exhibit 67, # 68 Exhibit 68, # 69 Exhibit 69, # 70 Exhibit 70, # 71 Exhibit 71, # 72 Exhibit 72, # 73 Exhibit 73, # 74 Exhibit 74, # 75 Exhibit 75, # 76 Exhibit 76, # 77 Exhibit 77, # 78 Exhibit 78, # 79 Exhibit 79, # 80 Exhibit 80, # 81 Exhibit 81, # 82 |

| | | |
|---|---|---|
| | | Exhibit 82, # <u>83</u> Exhibit 83, # <u>84</u> Exhibit 84, # <u>85</u> Exhibit 85, # <u>86</u> Exhibit 86, # <u>87</u> Exhibit 87, # <u>88</u> Exhibit 88, # <u>89</u> Exhibit 89, # <u>90</u> Exhibit 90, # <u>91</u> Exhibit 91, # <u>92</u> Exhibit 92, # <u>93</u> Exhibit 93, # <u>94</u> Exhibit 94, # <u>95</u> Exhibit 95, # <u>96</u> Exhibit 96, # <u>97</u> Exhibit 97, # <u>98</u> Exhibit 98, # <u>99</u> Exhibit 99, # <u>100</u> Exhibit 100, # <u>101</u> Exhibit 101, # <u>102</u> Exhibit 102, # <u>103</u> Exhibit 103, # <u>104</u> Exhibit 104, # <u>105</u> Exhibit 105, # <u>106</u> Exhibit 106, # <u>107</u> Exhibit 107, # <u>108</u> Exhibit 108, # <u>109</u> Exhibit 109, # <u>110</u> Exhibit 110, # <u>111</u> Exhibit 111, # <u>112</u> Exhibit 112, # <u>113</u> Exhibit 113, # <u>114</u> Exhibit 114, # <u>115</u> Exhibit 115, # <u>116</u> Exhibit 116, # <u>117</u> Exhibit 117, # <u>118</u> Exhibit 118, # <u>119</u> Exhibit 119, # <u>120</u> Exhibit 120, # <u>121</u> Exhibit 121, # <u>122</u> Exhibit 122, # <u>123</u> Exhibit 123, # <u>124</u> Exhibit 124, # <u>125</u> Exhibit 125, # <u>126</u> Exhibit 126, # <u>127</u> Exhibit 127, # <u>128</u> Exhibit 128, # <u>129</u> Exhibit 129, # <u>130</u> Exhibit 130, # <u>131</u> Exhibit 131, # <u>132</u> Exhibit 132, # <u>133</u> Exhibit 133, # <u>134</u> Exhibit 134, # <u>135</u> Exhibit 135, # <u>136</u> Exhibit 136, # <u>137</u> Exhibit 137, # <u>138</u> Exhibit 138, # <u>139</u> Exhibit 139, # <u>140</u> Exhibit 140)(Nikas, Luke) (Entered: 10/13/2018) |
| 10/15/2018 | 61 | SEALED DOCUMENT placed in vault.(rz) (Entered: 10/15/2018) |
| 10/15/2018 | 62 | SEALED DOCUMENT placed in vault.(rz) (Entered: 10/15/2018) |
| 10/24/2018 | <u>63</u> | JOINT LETTER MOTION for Extension of Time to File Response/Reply *related to parties' cross−motions for summary judgment* addressed to Judge John G. Koeltl. Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd..(Werbin, Barry) (Entered: 10/24/2018) |
| 10/31/2018 | <u>64</u> | ORDER granting 63 Letter Motion for Extension of Time to File Response/Reply. APPLICATION GRANTED. SO ORDERED. (Responses due by 11/20/2018, Replies due by 12/11/2018.) (Signed by Judge John G. Koeltl on 10/30/2018) (jca) (Entered: 10/31/2018) |
| 11/20/2018 | <u>65</u> | MEMORANDUM OF LAW in Opposition re: <u>54</u> MOTION for Summary Judgment . . Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd.. (Werbin, Barry) (Entered: 11/20/2018) |
| 11/20/2018 | <u>66</u> | COUNTER STATEMENT TO <u>56</u> Rule 56.1 Statement. Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd.. (Werbin, Barry) (Entered: 11/20/2018) |
| 11/20/2018 | <u>67</u> | DECLARATION of Barry Werbin in Opposition re: <u>54</u> MOTION for Summary Judgment .. Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd.. (Attachments: # <u>1</u> Exhibit QQQ, # <u>2</u> Exhibit RRR, # <u>3</u> Exhibit SSS, # <u>4</u> Exhibit TTT, # <u>5</u> Exhibit UUU, # <u>6</u> Exhibit VVV, # <u>7</u> Exhibit WWW, # <u>8</u> Exhibit XXX)(Werbin, Barry) (Entered: 11/20/2018) |
| 11/20/2018 | <u>68</u> | MEMORANDUM OF LAW in Opposition re: <u>51</u> MOTION for Summary Judgment . . Document filed by The Andy Warhol Foundation For The Visual Arts, Inc.. (Nikas, Luke) (Entered: 11/20/2018) |
| 11/21/2018 | <u>69</u> | DECLARATION of Luke Nikas in Opposition re: <u>51</u> MOTION for Summary Judgment .. Document filed by The Andy Warhol Foundation For The Visual Arts, Inc.. (Attachments: # <u>1</u> Exhibit 141, # <u>2</u> Exhibit 142, # <u>3</u> Exhibit 143, # <u>4</u> Exhibit 144, # <u>5</u> Exhibit 145, # <u>6</u> Exhibit 146, # <u>7</u> Exhibit 147, # <u>8</u> Exhibit 148, # <u>9</u> Exhibit 149, # <u>10</u> Exhibit 150, # <u>11</u> Exhibit 151, # <u>12</u> Exhibit 152, # <u>13</u> Exhibit 153, # <u>14</u> Exhibit 154, # <u>15</u> Exhibit 155, # <u>16</u> Exhibit 156, # <u>17</u> Exhibit 157, # <u>18</u> Exhibit 158, # <u>19</u> Exhibit 159, # <u>20</u> Exhibit 160, # <u>21</u> Exhibit 161, # <u>22</u> Exhibit 162, # <u>23</u> Exhibit 163, # <u>24</u> Exhibit 164, # <u>25</u> Exhibit 165, # <u>26</u> Exhibit 166, # <u>27</u> Exhibit 167, # <u>28</u> Exhibit 168, # <u>29</u> Exhibit 169, # <u>30</u> Exhibit 170, # <u>31</u> Exhibit 171)(Nikas, Luke) (Entered: 11/21/2018) |
| 11/21/2018 | <u>70</u> | COUNTER STATEMENT TO <u>52</u> Rule 56.1 Statement. Document filed by The Andy Warhol Foundation For The Visual Arts, Inc.. (Nikas, Luke) (Entered: 11/21/2018) |
| 11/26/2018 | 71 | SEALED DOCUMENT placed in vault.(rz) (Entered: 11/26/2018) |
| 12/11/2018 | <u>72</u> | REPLY MEMORANDUM OF LAW in Support re: <u>51</u> MOTION for Summary Judgment . *./Reply Memorandum of Law of Defendants and Counterclaim Plaintiff Lynn Goldsmith and Lynn Goldsmith, Ltd. in Further Support of their Motion for Summary Judgment*. Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd.. (Werbin, Barry) (Entered: 12/11/2018) |

| 12/11/2018 | 73 | DECLARATION of Barry Werbin, Esq. in Further Support of Goldsmith Parties' Cross–Motion for Summary Judgment, in Support re: 51 MOTION for Summary Judgment .. Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd.. (Attachments: # 1 Exhibit J–2 transcript pages from the deposition of Lynn Goldsmith inadvertently omitted from Exhibit J to Declaration dated 10/12/18 (Docket No.57))(Werbin, Barry) (Entered: 12/11/2018) |
| 12/11/2018 | 74 | REPLY MEMORANDUM OF LAW in Support re: 54 MOTION for Summary Judgment . . Document filed by The Andy Warhol Foundation For The Visual Arts, Inc.. (Nikas, Luke) (Entered: 12/11/2018) |
| 12/11/2018 | 75 | RULE 56.1 STATEMENT. Document filed by The Andy Warhol Foundation For The Visual Arts, Inc.. (Nikas, Luke) (Entered: 12/11/2018) |
| 12/11/2018 | 76 | DECLARATION of Luke Nikas in Support re: 54 MOTION for Summary Judgment .. Document filed by The Andy Warhol Foundation For The Visual Arts, Inc.. (Attachments: # 1 Exhibit 172, # 2 Exhibit 173)(Nikas, Luke) (Entered: 12/11/2018) |
| 12/14/2018 | 77 | LETTER addressed to Judge John G. Koeltl from Barry Werbin dated December 14, 2018 re: courtesy copies of cross–motion for summary judgment. Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd..(Werbin, Barry) (Entered: 12/14/2018) |
| 01/03/2019 | 78 | LETTER MOTION for Oral Argument addressed to Judge John G. Koeltl from Luke Nikas dated January 3, 2019. Document filed by The Andy Warhol Foundation For The Visual Arts, Inc..(Nikas, Luke) (Entered: 01/03/2019) |
| 03/28/2019 | 79 | ORDER granting 78 Letter Motion for Oral Argument. The Court will hold oral argument on the motions. The Clerk is directed to close document 78. So Ordered. (Signed by Judge John G. Koeltl on 3/27/19) (yv) (Entered: 03/28/2019) |
| 05/22/2019 | | Minute Entry for proceedings held before Judge John G. Koeltl: Oral Argument set for 5/30/2019 at 10:30 AM in Courtroom 14A, 500 Pearl Street, New York, NY 10007 before Judge John G. Koeltl. (Fletcher, Donnie) (Entered: 05/22/2019) |
| 05/23/2019 | 80 | CONSENT LETTER MOTION for Oral Argument *Adjournment* addressed to Judge John G. Koeltl. Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd..(Werbin, Barry) (Entered: 05/23/2019) |
| 05/23/2019 | 81 | ORDER granting in part and denying in part 80 Letter Motion for Oral Argument. A one month extension of the argument is unreasonable. Argument rescheduled to June 10, 2019 at 10:00 A.M. No further extensions. So Ordered. (Signed by Judge John G. Koeltl on 5/23/2019) (ks) (Entered: 05/24/2019) |
| 05/23/2019 | | Set/Reset Hearings: Oral Argument set for 6/10/2019 at 10:00 AM before Judge John G. Koeltl. (ks) (Entered: 05/24/2019) |
| 05/29/2019 | 82 | ORDER: Oral argument for the pending cross–motions for summary judgment is adjourned from June 10, 2019 at 10am to June 10, 2019 at 2:30pm. SO ORDERED. (Signed by Judge John G. Koeltl on 5/29/2019) ( Oral Argument set for 6/10/2019 at 02:30 PM before Judge John G. Koeltl.) (ks) (Entered: 05/29/2019) |
| 06/05/2019 | 83 | PROPOSED ORDER. Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd.. Related Document Number: [laptop permission]. (Werbin, Barry) **Proposed Order to be reviewed by Clerk's Office staff.** (Entered: 06/05/2019) |
| 06/06/2019 | | ***NOTICE TO ATTORNEY REGARDING REJECTION OF PROPOSED ORDER TO BRING PERSONAL ELECTRONIC DEVICE(S) OR GENERAL PURPOSE COMPUTING DEVICE(S) INTO THE COURTHOUSES OF THE SDNY FOR USE IN A PROCEEDING OR TRIAL. Notice to Attorney Barry Werbin re: Document 83 Proposed Order was rejected by the Clerk's Office for the following reason, the Order to Bring Personal Electronic Device(s) or General Purpose Computing Device(s) Into the Courthouses of the SDNY for Use in a Proceeding or Trial should not be electronically filed. Please download and review the Local Rules, Judge's Individual Rules of Practice and ECF Rules and Instructions, located at http://nysd.uscourts.gov/ecf_filing.php. (km) (Entered: 06/06/2019) |

| 06/10/2019 | | Minute Entry for proceedings held before Judge John G. Koeltl: Oral Argument held on 6/10/2019 re: 51 MOTION for Summary Judgment. Filed by Lynn Goldsmith, Ltd., Lynn Goldsmith. (Fletcher, Donnie) (Entered: 06/24/2019) |
|---|---|---|
| 07/01/2019 | 84 | OPINION AND ORDER: The Court has considered all the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, AWF's motion for summary judgment is granted, and Goldsmith's motion for summary judgment is denied. Goldsmith's copyright infringement counterclaim is dismissed. AWF should submit a proposed judgment by July 8, 2019. Goldsmith may submit any objections or counter judgment by July 10, 2019. The Clerk is directed to close all pending motions. SO ORDERED. (Signed by Judge John G. Koeltl on 7/1/2019) (jca) Modified on 7/3/2019 (jca). (Entered: 07/01/2019) |
| 07/08/2019 | 85 | PROPOSED JUDGMENT. Document filed by The Andy Warhol Foundation For The Visual Arts, Inc.. (Nikas, Luke) (Entered: 07/08/2019) |
| 07/10/2019 | 86 | RESPONSE re: 85 Proposed Judgment . Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd.. (Attachments: # 1 Counter–Proposed Judgment)(Werbin, Barry) (Entered: 07/10/2019) |
| 07/15/2019 | 87 | JUDGMENT AND ORDER: It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Opinion & Order dated July 1, 2019 (Dkt. 84) ("Opinion"), Plaintiff–Counterclaim– Defendant The Andy Warhol Foundation for the Visual Arts, Inc. 's ("AWF") motion for summary judgment (Dkt. 54) is granted with respect to AWF's Prince Series works (as defined in the Opinion) insofar as such works are entitled to a fair use defense under 17 U.S.C. §107; Defendants–Counterclaim–Plaintiffs Lynn Goldsmith and Lynn Goldsmith Ltd.'s motion for summary judgment (Dkt. 51) is denied and Defendant–Counterclaim–Plaintiff Lynn Goldsmith's amended counterclaim (Dkt. 20) is dismissed with prejudice. Any application for costs and attorney's fees is stayed until fourteen days (14) after a mandate is issued on any appeal from this judgment or the time to appeal has expired, whichever date first occurs. (Signed by Judge John G. Koeltl on 7/14/2019) (ama) Modified on 7/15/2019 (ama). (Entered: 07/15/2019) |
| 07/15/2019 | | Terminate Transcript Deadlines (ama) (Entered: 07/15/2019) |
| 07/15/2019 | 88 | AO 121 FORM COPYRIGHT – CASE TERMINATED– SUBMITTED. In compliance with the provisions of 17 U.S.C. 508, the Register of Copyrights is hereby advised that a final decision was rendered on 7/15/2019 in a court action filed on the following copyright(s) in the U.S. District Court Southern District of New York. Form e–mailed to Register of Copyrights. (Attachments: # 1 Supplement Complaint) (ama) (Entered: 07/15/2019) |
| 07/31/2019 | 89 | TRANSCRIPT of Proceedings re: CONFERENCE held on 6/10/2019 before Judge John G. Koeltl. Court Reporter/Transcriber: Rose Prater, (212) 805–0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/21/2019. Redacted Transcript Deadline set for 9/3/2019. Release of Transcript Restriction set for 10/29/2019.(McGuirk, Kelly) (Entered: 07/31/2019) |
| 07/31/2019 | 90 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 6/10/19 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 07/31/2019) |
| 08/07/2019 | 91 | NOTICE OF APPEAL from 87 Judgment,,,,. Document filed by Lynn Goldsmith, Lynn Goldsmith, Ltd.. Filing fee $ 505.00, receipt number ANYSDC–17386913. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Werbin, Barry) (Entered: 08/07/2019) |
| 08/07/2019 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 91 Notice of Appeal,. (nd) (Entered: 08/07/2019) |

| 08/07/2019 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for <u>91</u> Notice of Appeal filed by Lynn Goldsmith, Ltd., Lynn Goldsmith were transmitted to the U.S. Court of Appeals. (nd) (Entered: 08/07/2019) |



**EXHIBIT 3**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

THE ANDY WARHOL FOUNDATION FOR THE
VISUAL ARTS, INC.,

               Plaintiff,

               vs.

LYNN GOLDSMITH AND LYNN GOLDSMITH,
LTD.

               Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - -

LYNN GOLDSMITH,

               Counterclaim Plaintiff,

          vs.

THE ANDY WARHOL FOUNDATION FOR THE
VISUAL ARTS, INC.,

               Counterclaim Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Case No.  17-cv-02532-JGK

[COUNTER-PROPOSED]
JUDGMENT AND ORDER

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _7-15-19_

     It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in

the Court's Opinion & Order dated July 1, 2019 (Dkt. 84) ("Opinion"), Plaintiff-Counterclaim-

Defendant The Andy Warhol Foundation for the Visual Arts, Inc.'s ("AWF") motion for

summary judgment (Dkt. 54) is granted with respect to AWF's Prince Series works (as defined

in the Opinion) insofar as such works are entitled to a fair use defense under 17 U.S.C. §107;

Defendants-Counterclaim-Plaintiffs Lynn Goldsmith and Lynn Goldsmith Ltd.'s motion for

summary judgment (Dkt. 51) is denied and Defendant-Counterclaim-Plaintiff Lynn Goldsmith's

amended counterclaim (Dkt. 20) is dismissed with prejudice.

*Any application for costs and attorney's fees is stayed until fourteen (14) days after a mandate is issued on any appeal from this Judgment or the time to appeal has expired, whichever date first occurs.*

Dated:  New York, New York

_____ July 14 _____, 2019

_____

HON. JOHN G. KOELTL
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: ___ꓕ___|___I___9___

THE ANDY WARHOL FOUNDATION FOR THE
VISUAL ARTS, INC.,

                    Plaintiff,

        - against -

LYNN GOLDSMITH ET AL.,

                    Defendants.

17-cv-2532 (JGK)

OPINION AND ORDER

JOHN G. KOELTL, District Judge:

This case raises the question of whether Andy Warhol's use of a photograph of an iconic singer as the basis for a series of artworks is protected as fair use.

More particularly, the Andy Warhol Foundation for the Visual Arts, Inc. ("AWF"), seeks a declaratory judgment declaring that works created by Andy Warhol based on a photograph of Prince Rogers Nelson, best known as "Prince," taken by photographer Lynn Goldsmith do not constitute violations of the Copyright Act.[1] Goldsmith has filed a counterclaim against AWF claiming that the Warhol works do constitute copyright infringement. AWF moves for summary judgment granting its request for a declaratory judgment and dismissing Goldsmith's counterclaim; Goldsmith moves for summary

---

[1] The plaintiff seeks a declaratory judgment against both Lynn Goldsmith and Lynn Goldsmith Ltd., which is Lynn Goldsmith's photography agency. For ease of reference, the Court refers to both parties as "Goldsmith."

judgment denying AWF's request for a declaratory judgment and holding that AWF infringed her copyright. For the reasons discussed below, AWF's motion is **granted** and Goldsmith's motion is **denied**.

## I.

The standard for granting summary judgment is well established. "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will

2

properly preclude the entry of summary judgment." Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a
court must resolve all ambiguities and draw all reasonable
inferences against the moving party. See Matsushita Elec. Indus.
Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary
judgment is improper if there is any evidence in the record from
any source from which a reasonable inference could be drawn in
favor of the nonmoving party. See Chambers v. TRM Copy Ctrs.
Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets
its burden, the nonmoving party must produce evidence in the
record and "may not rely simply on conclusory statements or on
contentions that the affidavits supporting the motion are not
credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532
(2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15
(2d Cir. 1998). When there are cross motions for summary
judgment, the Court must assess each of the motions and
determine whether either party is entitled to judgment as a
matter of law. Admiral Indem. Co. v. Travelers Cas. & Sur. Co.
of Am., 881 F. Supp. 2d 570, 574 (S.D.N.Y. 2012).

## II.

The following facts are undisputed unless otherwise noted.

### A.

Lynn Goldsmith is a photographer who has photographed numerous rock, jazz, and R&B performers. AWF's 56.1 Stmt. ¶¶ 37–38. Goldsmith's work centers on helping others formulate their identities, which she aims to capture and reveal through her photography. Id. ¶¶ 41, 43. To expose and capture her subjects' "true selves," Goldsmith employs several interpersonal techniques to establish rapport with her subjects, as well as several photographic techniques with respect to lighting, camera position, and other elements. See id. ¶¶ 44–63.

Andy Warhol, an "art-world colossus" who lived between 1928 and 1987, was an artist who contributed significantly to contemporary art across a variety of media. AWF's 56.1 Stmt. ¶¶ 1–2; Goldsmith's 56.1 Stmt. ¶¶ 71, 154. Warhol's contemporary art brand has remained powerful. AWF's 56.1 Stmt. ¶ 1. AWF is a New York not-for-profit corporation that was formed in 1987 after Warhol's death and in accordance with his will. Goldsmith's 56.1 Stmt. ¶¶ 4, 72. It was created for the purpose of advancing visual art, "particularly work that is experimental, under-recognized, or challenging in nature." AWF's 56.1 Counter Stmt. ¶ 238. AWF controls Warhol images and licenses them to fund its programs. Goldsmith's 56.1 Stmt. ¶ 5.

4

On December 2, 1981, Goldsmith photographed Prince in concert at the Palladium in New York City. AWF's 56.1 Stmt. ¶ 68. The next day, she photographed him in her New York City studio on assignment from Newsweek Magazine. Id. ¶¶ 69-70. Prince arrived at the studio wearing makeup, and Goldsmith applied more makeup "to connect with Prince physically and in recognition of her feeling [that] Prince was in touch with the female part of himself" while also being "very much male." Id. ¶ 76 (quotation marks omitted, alteration in original). Prince was photographed in his own clothes, except for a black sash that he picked from Goldsmith's clothing room and wore around his neck. Id. ¶¶ 78-79, 81. Goldsmith chose the photographic equipment she used for the shoot. Id. ¶ 83. She also decided to use a plain white background and lit the shoot in a way that emphasized Prince's "chiseled bone structure." Id. ¶¶ 82, 84-85. Goldsmith first shot black and white photographs and then switched to color film. Goldsmith's 56.1 Stmt. ¶ 28.

Shortly after the shoot began — and after Goldsmith had taken approximately eleven photographs of Prince — Prince retreated to the studio's makeup room. AWF's 56.1 Stmt. ¶¶ 88-89. Goldsmith testified that Prince was "really uncomfortable" during the shoot. Id. ¶ 87. Prince remained in the makeup room for a while and then, following an exchange with Goldsmith in which she said he could leave if he wanted, he left the studio.

Id. ¶ 88. According to Goldsmith, the photographs from her shoot with Prince show that he is "not a comfortable person" and that he is a "vulnerable human being." Id. ¶ 90. Newsweek published one of Goldsmith's photographs of Prince in concert a few weeks after the shoot but did not publish any photographs from the shoot in her studio. Id. ¶¶ 94-95.

In October 1984, Vanity Fair — which was at the time and is still owned by Condé Nast, Goldsmith's 56.1 Stmt. ¶ 91 — licensed one of Goldsmith's black-and-white studio portraits of Prince from her December 3, 1981 shoot (the "Goldsmith Prince Photograph") for $400. AWF's 56.1 Stmt. ¶ 97; Goldsmith's 56.1 Stmt. ¶ 40. The Goldsmith Prince Photograph was licensed "for use as an artist's reference in connection with an article to be published in Vanity Fair Magazine." Goldsmith's 56.1 Stmt. ¶ 40. The invoice did not specify which photograph from the shoot was licensed and did not mention Andy Warhol. Id. ¶ 102; Goldsmith's 56.1 Counter Stmt. ¶ 105. Goldsmith's photography agency, through its staff, submitted the Goldsmith Prince Photograph to Vanity Fair; Goldsmith herself did not know at the time that the photograph had been licensed for use as an artist's reference. Goldsmith's 56.1 Stmt. ¶ 47.

Vanity Fair commissioned Warhol to create an illustration of Prince for an article titled "Purple Fame," which was to be published in the November 1984 issue of its magazine. Id. ¶¶ 48-

6

49. Warhol created a full-color illustration of Prince that ultimately appeared in the "Purple Fame" article and in the magazine's table of contents. Id. ¶¶ 49, 53. The article stated that it featured "a special portrait for Vanity Fair by ANDY WARHOL." Id. ¶ 49. The article contained a copyright attribution credit for the portrait as follows: "source photograph © 1984 by Lynn Goldsmith/LGI." Id. ¶ 51. Condé Nast's representative stated that the reference to "source photograph" meant the "underlying image that was used to create the artwork." Id. ¶ 52.



The "Purple Fame" article and accompanying Warhol illustration of Prince.

Based on the Goldsmith Prince Photograph, Warhol created the "Prince Series," comprised of sixteen distinct works –

including the one used in Vanity Fair magazine – depicting
Prince's head and a small portion of his neckline. Id. ¶¶ 57,
60; AWF's 56.1 Stmt. ¶ 112. Twelve of the works are silkscreen
paintings, two are screen prints on paper, and two are drawings.
AWF's 56.1 Stmt. ¶ 112. Goldsmith alleges that Warhol copied the
Goldsmith Prince Photograph at some point during his process of
creating the Prince Series; AWF does not concede this point and
instead states equivocally that "[t]here is no evidence that
[Warhol] was given the photograph itself" but, "somehow," Warhol
created the Prince Series. See Goldsmith's Br. at 10-11; AWF's
Br. at 18. However, AWF fact witness Neil Printz testified that
"typically" the Warhol silkscreen paintings and prints were
"based on a photograph" and "[t]ypically for Warhol, since he
worked with photographs, he would have his silkscreen printer
create a high contrast half tone silkscreen from a photograph."
Goldsmith's 56.1 Stmt. at ¶ 66; AWF's 56.1 Counter Stmt. ¶ 66.

**AWF-2001 (Ex. 48)**
Andy Warhol, Prince, 1984, acrylic and
silkscreen ink on linen, 20 x 16 inches



**AWF-1992 (Ex. 39)**
Andy Warhol, Prince, 1984, acrylic and
silkscreen ink on linen, 20 x 16 inches



**AWF-1993 (Ex. 40)**
Andy Warhol, Prince, 1984, acrylic and
silkscreen ink on linen, 20 x 16 inches



**AWF-1995 (Ex. 42)**
Andy Warhol, Prince, 1984, acrylic and
silkscreen ink on linen, 20 x 16 inches



**AWF-2002 (Ex. 49)**
Andy Warhol, Prince, 1984, acrylic and
silkscreen ink on linen, 20 x 16 inches



**AWF-1994 (Ex. 41)**
Andy Warhol, Prince, 1984, acrylic and
silkscreen ink on linen, 20 x 16 inches



**AWF-2003 (Ex. 50)**
Andy Warhol, Prince, 1984, acrylic and
silkscreen ink on linen, 20 x 16 inches



**AWF-1997 (Ex. 44)**
Andy Warhol, Prince, 1984, acrylic and
silkscreen ink on linen, 20 x 16 inches



**AWF-1996 (Ex. 43)**
Andy Warhol, Prince, 1984, acrylic and
silkscreen ink on linen, 20 x 16 inches



**AWF-1999 (Ex. 46)**
Andy Warhol, Prince, 1984, acrylic and
silkscreen ink on linen, 20 x 16 inches



**AWF-2004 (Ex. 51)**
Andy Warhol, Prince, 1984, acrylic and
silkscreen ink on linen, 20 x 16 inches



**AWF-2005 (Ex. 52)**
Andy Warhol, Prince, 1984, acrylic and
silkscreen ink on linen, 20 x 16 inches



**AWF-1998 (Ex. 45)**
Andy Warhol, Prince, 1984, acrylic and
silkscreen ink on linen, 20 x 16 inches



**AWF-2000 (Ex. 47)**
Andy Warhol, Prince, 1984, acrylic and
silkscreen ink on linen, 20 x 16 inches



**AWF-2006 (Ex. 53)**
Andy Warhol, Prince, 1984, acrylic and
silkscreen ink on linen, 20 x 16 inches



**AWF-2007 (Ex. 54)**
Andy Warhol, Prince, 1984, acrylic and
silkscreen ink on linen, 20 x 16 inches



The sixteen Prince Series works.

9

After Warhol died in 1987, AWF obtained ownership of the Prince Series from Warhol's estate. AWF's 56.1 Stmt. ¶ 148. Twelve of the Prince Series works have since been auctioned or sold throughout the world, and AWF has given the remaining four to the Andy Warhol Museum in Pittsburgh, Pennsylvania. Id. ¶¶ 149-51. The Prince Series works have also been displayed in museums, galleries, books, magazines, promotional materials, and other public locations more than thirty times since the November 1984 issue of Vanity Fair. Id. ¶ 152.

**B.**

Prince died on April 21, 2016. Goldsmith's 56.1 Stmt. ¶ 87. The next day, Vanity Fair published an online copy of its November 1984 "Purple Fame" article, which had credited Warhol and Goldsmith for the Prince illustration in the article. Id. ¶ 88. Condé Nast then decided to issue a commemorative magazine titled "The Genius of Prince" and obtained a commercial license to use one of Warhol's Prince Series works as the magazine's cover. Id. ¶¶ 113, 119. The magazine contained a copyright credit to Warhol but not to Goldsmith. Id. ¶ 115. Condé Nast published the magazine in May 2016. Id. ¶ 113.

Goldsmith first learned that Warhol created the Prince illustration for Vanity Fair after Prince's death. Id. ¶ 120. Before then, she had never seen any work in the Prince Series. Id. ¶ 121. Goldsmith contacted AWF and advised that she believed

10

the Condé Nast magazine cover infringed one of her Prince
photograph copyrights. Id. ¶ 122. Initially she told AWF that
Condé Nast's use infringed one of her colored Prince portraits
but, after further comparison, notified AWF that Condé Nast's
use actually infringed one of her black-and-white portraits –
the Goldsmith Prince Photograph. Id. ¶¶ 123-27. Following this
exchange, Goldsmith obtained a copyright registration for the
Goldsmith Prince Photograph as an unpublished work. Id. ¶ 159.



The Condé Nast magazine cover and the Goldsmith Prince Photograph.

AWF has made each of the Prince Series works available for
licensing to third parties for use in books, magazines,
newspapers, and for other merchandizing purposes. Id. ¶¶ 128-37.

Goldsmith licenses single images of her photography for various editorial and commercial uses, often to magazines and record companies. Id. ¶¶ 138-39. She also offers mosaic prints, which are composed by combining several of her images, and fine-art prints. Id. ¶¶ 140-42. But Goldsmith has not yet editioned or sold any prints of the Goldsmith Prince Photograph. Id. ¶ 143. Goldsmith testified that she has not done so "because she doesn't edition all her work at once, and as she gets older she intends to start editioning her other works, anticipating that prices will then go up." Id.

Goldsmith testified that in 2004, she sold a fine-art print of Prince that she created in 1993 to a private collector who also owns three Warhol works of art. Id. ¶ 155. Moreover, between 2005 and 2016, Goldsmith issued ten or eleven licenses for other Goldsmith photographs of Prince – photographs not taken at the December 3, 1981 studio shoot but in other venues such as concerts – to various magazines and venues. Id. ¶¶ 144-45; AWF's 56.1 Reply Stmt. ¶ 178. However, aside from the license to Vanity Fair in 1984, Goldsmith does not recall licensing the Goldsmith Prince Photograph or any other photograph that she took at the December 1981 studio shoot. AWF's 56.1 Stmt. ¶ 182.

C.

AWF seeks a declaratory judgment declaring that none of the sixteen works in the Prince Series infringe the copyright of the Goldsmith Prince Photograph. AWF argues that the Prince Series works are not substantially similar to the Goldsmith Prince Photograph and, in any event, the Prince Series works are protected by the fair use doctrine. Goldsmith, on the other hand, seeks summary judgment denying AWF's request for a declaratory judgment and holding that the Prince Series works infringe the copyright of the Goldsmith Prince Photograph. She contends that Warhol copied her photograph in creating the Prince Series, that the Prince Series works in their final forms are substantially similar to the photograph, and that AWF does not have a viable fair use defense.

AWF also raises a statute of limitations defense, arguing that the Copyright Act's three-year statute of limitations bars Goldsmith from claiming infringement for acts that occurred more than three years before she brought her claim. See 17 U.S.C. § 507(b); Psihoyos v. John Wiley & Sons, Inc., 748 F.3d 120, 124 (2d Cir. 2014). Goldsmith counters that under the "discovery rule," "copyright infringement claims do not accrue until actual or constructive discovery of the relevant infringement." See Psihoyos, 748 F.3d at 125. Goldsmith adds that, either way, her infringement claim is based on AWF's licensing a Prince Series

13

work to Condé Nast in 2016, which is well within the limitations period. Goldsmith's Br. at 40. Similarly, any future licensing of the Prince Series would allegedly constitute new acts of infringement for which Goldsmith would have a remedy. AWF does not dispute that this particular claim is timely brought. AWF's Opp. at 42.

## III.

Photographs are generally considered creative works that merit copyright protection. Burrow-Giles Lithographic Co. v. Sarony, 111 U.S. 53, 60 (1884); see Mannion v. Coors Brewing Co., 377 F. Supp. 2d 444, 450 (S.D.N.Y. 2005) ("Almost any photograph may claim the necessary originality to support a copyright." (quotation marks omitted)); Monster Commc'ns, Inc. v. Turner Broad. Sys., Inc., 935 F. Supp. 490, 494 (S.D.N.Y. 1996) (stating that "photographic images of actual people, places and events may be" copyrighted). The protectible, original elements of a photograph include "posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved." Rogers v. Koons, 960 F.2d 301, 307 (2d Cir. 1992). But "aspects of [a photograph] that necessarily flow" from the photograph's idea or the photographer's "choice of a given concept" are not protectible. Bill Diodato Photography, LLC v. Kate Spade, LLC, 388 F. Supp. 2d 382, 392 (S.D.N.Y. 2005). Thus, although the

14

elements constituting a photographer's original expression of her subject are copyrightable, the subject itself — and general features of that subject — are not. Kisch v. Ammirati & Puris Inc., 657 F. Supp. 380, 382 (S.D.N.Y. 1987); see Mattel, Inc. v. Goldberger Doll Mfg. Co., 365 F.3d 133, 136 (2d Cir. 2004).

"To establish copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Williams v. Crichton, 84 F.3d 581, 587 (2d Cir. 1996) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). A party can pursue a copyright infringement claim in court once the copyright claimant has properly filed a registration application, and the Copyright Register has examined the application and registered the copyright. Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC, 139 S. Ct. 881, 892 (2019). The parties here do not dispute that Goldsmith has a valid and registered copyright for the Goldsmith Prince Photograph.

The second element of a copyright claim has two subparts: Goldsmith must demonstrate first that AWF copied her work and then that such copying was unlawful because a "substantial similarity" exists between the allegedly infringing works (the Prince Series works) and the protectible elements of the copyrighted work (the Goldsmith Prince Photograph). See

15

Knitwaves, Inc. v. Lollytogs Ltd. (Inc.), 71 F.3d 996, 1002 (2d

Cir. 1995); see also Fisher-Price, Inc. v. Well-Made Toy Mfg.

Corp., 25 F.3d 119, 123 (2d Cir. 1994). To establish the first

subpart in the absence of proof of direct copying, a party "may

establish copying circumstantially by demonstrating that the

person who composed the [allegedly infringing] work had access

to the copyrighted material and that there are similarities

between the two works that are probative of copying." Jorgensen

v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003) (quotation

marks omitted). The similarity established at this stage to

prove copying is referred to as "probative similarity."[2] AWF does

not deny for purposes of these motions that there was access and

sufficient probative similarity to establish that Warhol

"copied" the Goldsmith Prince Photograph — at least to some

extent. June 10, 2019 Transcript ("Tr.") at 4.

"Once actual copying has been established, the copyright

owner must then satisfy the 'improper appropriation' requirement

by demonstrating that 'substantial similarities' as to the

protected elements of the work would cause an average lay

observer to 'recognize the alleged copy as having been

appropriated from the copyrighted work.'" Kate Spade, 388 F.

_____

[2] The "probative similarity" inquiry and the subsequent "substantial
similarity" inquiry are distinct. Thus, this Opinion uses the term "probative
similarity" for the sake of clarity to refer to the test for copying that
requires access and similarity probative of copying. See Porto v. Guirgis,
659 F. Supp. 2d 597, 608 n.3 (S.D.N.Y. 2009).

Supp. 2d at 389 (quoting Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 911-12 (2d Cir. 1980)). This "ordinary observer test" asks "whether the ordinary observer, unless he set out to detect the disparities [between the two works], would be disposed to overlook them, and regard their aesthetic appeal as the same." Folio Impressions, Inc. v. Byer Cal., 937 F.2d 759, 765 (2d Cir. 1991) (quotation marks omitted). When the protected work contains both protectible and unprotectible elements, such as a photograph, courts must take on a more discerning comparison by extracting the unprotectible elements from consideration and then considering whether the remaining protectible elements of the works are substantially similar. Kate Spade, 388 F. Supp. 2d at 390 (citing Knitwaves, 71 F.3d at 1002). However, this comparison must not be so discerning that the protected work's "total concept and feel" is ignored. See Boisson v. Banian, Ltd, 273 F.3d 262, 272-73 (2d Cir. 2001).

Goldsmith alleges as one theory of infringement that Warhol, or his agents, reproduced her entire photograph, including its protectible and unprotectible elements, without authorization at some point during Warhol's process of creating the Prince Series. See Am. Counterclaim ¶¶ 1, 42; Goldsmith's Br. at 10-11, 23. Although this a valid basis for an

infringement claim,[3] it relates to conduct that occurred nearly forty years ago and is well outside the Copyright Act's statute of limitations. See Stone v. Williams, 970 F.2d 1043, 1049-50 (2d Cir. 1992) ("Recovery is allowed only for those acts occurring within three years of suit, and is disallowed for earlier infringing acts.").[4] Goldsmith appears to recognize this, and focuses her infringement claim primarily on AWF's more recent licensing of the Price Series works – namely, the 2016 license to Condé Nast and the claim by AWF that it has the right to continue licensing the Prince Series works. See Am. Counterclaim ¶¶ 28-32, 42-43; Goldsmith Br. at 40.[5]

AWF argues that it did not infringe Goldsmith's copyright to her Prince photograph because none of Warhol's Prince Series works, including the work licensed to Condé Nast in 2016, are substantially similar to the Goldsmith Prince Photograph under the "ordinary observer test" for substantial similarity. But the

---

[3] See 17 U.S.C. § 106 ("[T]he owner of copyright under this title has the exclusive rights to reproduce the copyrighted work in copies . . . ."); Walker v. Univ. Books, Inc., 602 F.2d 859, 864 (9th Cir. 1979) ("[T]he fact that an allegedly infringing copy of a protected work may itself be only an inchoate representation of some final product to be marketed commercially does not in itself negate the possibility of infringement."); 2 Nimmer on Copyright § 8.02[C] (2019) ("[R]eproduction standing alone constitutes a prima facie violation of the copyright owner's rights.").

[4] Goldsmith does not contend that the "discovery rule" set out in Psihoyos, 748 F.3d 120, saves this claim.

[5] Indeed, Goldsmith pleads, "Plaintiff Goldsmith does not presently know if the Foundation has made additional unauthorized infringing uses of the Goldsmith Photo within the past three years, and reserves the right to amend this Counterclaim to add any such additional acts of infringement." Am. Counterclaim ¶ 32 (emphasis added); see also Tr. at 41-42.

Court need not address this argument because it is plain that the Prince Series works are protected by fair use.[6]

## IV.

"Fair use" is a statutory exception to copyright infringement. 17 U.S.C. § 107. "Although the issue of fair use is a mixed question of law and fact, the court may resolve issues of fair use at the summary judgment stage where," as here, "there are no genuine issues of material fact as to such issues." Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605, 608 (2d Cir. 2006). "The four factors identified by Congress as especially relevant in determining whether the use was fair are: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the substantiality of the portion used in relation to the copyrighted work as a whole; (4) the effect on the potential market for or value of the copyrighted work." Harper & Row Publishers v. Nation Enters., 471 U.S. 539, 560-61 (1985). These factors must be weighed in a "an open-ended and context-sensitive inquiry." Cariou v. Prince, 714 F.3d 694, 705 (2d Cir. 2013). The critical question in determining fair use is whether copyright law's goal of "promot[ing] the Progress of Science and useful Arts would be

---

[6] Other courts have considered whether a work infringed the copyright of a photograph upon which the work was based solely on fair use grounds. See, e.g., Kienitz v. Sconnie Nation LLC, 766 F.3d 756, 757 (7th Cir. 2014); Cariou v. Prince, 714 F.3d 694, 705 (2d Cir. 2013).

better served by allowing the use than by preventing it." Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc., 150 F.3d 132, 141 (2d Cir. 1998) (citation and quotation marks omitted, alteration in original).

**A.**

The first factor, the purpose and character of the use, considers whether the secondary work "is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). But the "[m]ost important" consideration under the first factor is the "transformative" nature of the work at issue. Bill Graham Archives, 448 F.3d at 608. The central purpose of this investigation is to determine "whether the new work merely supersede[s] the objects of the original creation or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579 (1994) (citations and quotation marks omitted, alteration in original). "The law imposes no requirement that a work comment on the original or its author in order to be considered transformative . . . ." Cariou, 714 F.3d at 706. Generally, "the more transformative the new work, the less will be the

significance of other factors, like commercialism . . . ."
Campbell, 510 U.S. at 579; see Cariou, 714 F.3d at 708.[7]

Warhol's Prince Series works are commercial in nature.
Indeed, twelve of the sixteen works have been auctioned or sold
throughout the world, and AWF has made each of the sixteen works
available for licensing to third parties for use in books,
magazines, newspapers, and for other merchandizing purposes.
However, AWF gave four of the works to the Andy Warhol Museum in
Pittsburgh, and some of the other works have been exhibited at
other galleries and museums. The Second Circuit Court of Appeals
has commented that "[n]otwithstanding the fact that artists are
sometimes paid and museums sometimes earn money, the public
exhibition of art is widely and we think properly considered to
have value that benefits the broader public interest." Blanch v.
Koons, 467 F.3d 244, 254 (2d Cir. 2006) (quotation marks
omitted). Moreover, AWF is a not-for-profit entity that was
created for the purpose of advancing visual art, and profits
derived from licensing Warhol's works help fund AWF's programs.
Thus, although the Prince Series works are commercial in nature,
they also add value to the broader public interest.

---

[7] Goldsmith points out that Cariou has been criticized for over-
emphasizing transformative use. Goldsmith's Br. at 29. However, Cariou
remains binding law in this Circuit, and indeed this Circuit has a long
tradition of recognizing transformative use dating back to Judge Leval's
landmark article, Toward A Fair Use Standard, 103 Harv. L. Rev. 1105 (1990),
cited in Cariou.

In any event, the Prince Series works are transformative, and therefore the import of their (limited) commercial nature is diluted. If "looking at the [works] side-by-side," the secondary work "ha[s] a different character, . . . a new expression, and employ[s] new aesthetics with creative and communicative results distinct" from the original, the secondary work is transformative as a matter of law. Cariou, 714 F.3d at 707–08. The Court must "examine how the [Prince Series works] may 'reasonably be perceived' in order to assess their transformative nature." See id. at 707 (quoting Campbell, 510 U.S. at 582).

Each of the Prince Series works may reasonably be perceived to be transformative of the Goldsmith Prince Photograph. As Goldsmith has confirmed, her photographic work centers on helping others formulate their identities, which she aims to capture and reveal through her photography. Her photoshoot illustrated that Prince is "not a comfortable person" and that he is a "vulnerable human being." AWF's 56.1 Stmt. ¶ 90. The Goldsmith Prince Photograph reflects these qualities.

Warhol's Prince Series, in contrast, can reasonably be perceived to reflect the opposite. In all but one of the works, Prince's torso is removed and his face and a small portion of his neckline are brought to the forefront. The details of Prince's bone structure that appear crisply in the photograph,

which Goldsmith sought to emphasize, are softened in several of the Prince Series works and outlined or shaded in the others. Prince appears as a flat, two-dimensional figure in Warhol's works, rather than the detailed, three-dimensional being in Goldsmith's photograph. Moreover, many of Warhol's Prince Series works contain loud, unnatural colors, in stark contrast with the black-and-white original photograph. And Warhol's few colorless works appear as rough sketches in which Prince's expression is almost entirely lost from the original.

These alterations result in an aesthetic and character different from the original. The Prince Series works can reasonably be perceived to have transformed Prince from a vulnerable, uncomfortable person to an iconic, larger-than-life figure. The humanity Prince embodies in Goldsmith's photograph is gone. Moreover, each Prince Series work is immediately recognizable as a "Warhol" rather than as a photograph of Prince – in the same way that Warhol's famous representations of Marilyn Monroe and Mao are recognizable as "Warhols," not as realistic photographs of those persons.[8]

---

[8] At the argument of the current motions, counsel for Goldsmith suggested that the fair use test is "almost like you know it when you see it." Tr. at 33. This calls to mind Justice Stewart's test for obscenity: "I know it when I see it." Jacobellis v. Ohio, 378 U.S. 184, 197 (1964) (Stewart J., concurring). If that were the test, it is plain that the Prince Series works are "Warhols," and the Goldsmith Prince Photograph is not a "Warhol."

In sum, the Prince Series works are transformative. They "have a different character, give [Goldsmith's] photograph[] a new expression, and employ new aesthetics with creative and communicative results distinct from [Goldsmith's]." See Cariou, 714 F.3d at 708. They add something new to the world of art and the public would be deprived of this contribution if the works could not be distributed. The first fair use factor accordingly weighs strongly in AWF's favor.

**B.**

The second fair use factor considers "the nature of the copyrighted work." 17 U.S.C. § 107(2). "This factor calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." Campbell, 510 U.S. at 586. Courts consider whether the copyrighted work is (1) expressive or creative versus factual or informational and (2) unpublished versus published. Cariou, 714 F.3d at 709-10. Fair use of expressive or creative works is more difficult to establish than fair use of factual or informational works, and the fair use defense is narrower when applied to unpublished works than when applied to published works. Id. However, as with the first fair use factor, the second factor's significance is diminished when the secondary work uses the copyrighted work for a transformative purpose. Id.

24

AWF does not dispute that the Goldsmith Prince Photograph is a creative work, and photographs are generally found to be creative works. See Rogers, 960 F.2d at 310 (stating that the photograph at issue was a creative and imaginative work); see also Cariou, 714 F.3d at 710 ("[T]here is no dispute that [the plaintiff's photographic] work is creative . . . ."). The photograph is also unpublished, which would ordinarily weigh in Goldsmith's favor. However, the reasons unpublished works enjoy additional protection against fair use – including respect for the author's choices of when to make a work public and whether to withhold a work to shore up demand[9] – carry little force in this case, where Goldsmith's photography agency licensed the photograph for use as an artist's reference. Moreover, this factor is of limited importance because the Prince Series works are transformative works. Therefore, the second fair use factor favors neither party.

### C.

Under the third factor of the fair use analysis, courts consider "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). This inquiry "must take into account that the 'the extent of permissible copying varies with the purpose and

---

[9] See 4 Nimmer on Copyright § 13.05[A][2][b].

character of the use.'" Bill Graham Archives, 448 F.3d at 613
(quoting Campbell, 510 U.S. at 586–87). Courts therefore ask
"whether the quantity and value of the materials used are
reasonable in relation to the purpose of the copying" while
recognizing that substantial, key portions of a work may be
taken for purposes of transforming that work. Cariou, 714 F.3d
at 710 (alteration and quotation marks omitted).

Goldsmith contends that this factor weighs in her favor
because Warhol's Prince Series works contain the essence of the
entire Goldsmith Prince Photograph; that the photograph's core
protectible elements remain in Warhol's works. Ostensibly in
support of this argument, Goldsmith states that "Warhol had to
use and incorporate the same expression of the Goldsmith Photo
in creating the Warhol [Vanity Fair] image because he was
commissioned by Vanity Fair to do just that." Goldsmith's Br. at
35. AWF counters that Warhol used only a portion of the
Goldsmith Prince Photograph and that the Prince Series works, in
their final forms, contain none of the protectible elements of
Goldsmith's photograph.

In Kienitz v. Sconnie Nation LLC, the Seventh Circuit Court
of Appeals faced circumstances similar to those in this case,
where the defendants took an entire photograph of the then-Mayor
of Madison, Wisconsin, from a website without permission and
altered it into a parody of the Mayor. 766 F.3d 756, 757 (7th

26

Cir. 2014). The defendants then sold t-shirts and tank tops that displayed their altered image. Id.



The original photograph and the altered image in Kienitz.

The Kienitz court found that the defendant's work was protected by fair use[10] and placed particular emphasis on the third fair use factor, stating:

> Defendants removed so much of the original that, as with the Cheshire Cat, only the smile remains. Defendants started with a low-resolution version posted on the City's website, so much of the original's detail never had a chance to reach the copy; the original's background is gone; its colors and shading are gone; the expression in [the Mayor's] eyes can no longer be read; after the posterization (and reproduction by silk-screening), the effect of the lighting in the original is almost

___
[10] The court reached this result after expressly criticizing Cariou's approach to transformative use.

extinguished. What is left, besides a hint of [the Mayor's] smile, is the outline of his face, which can't be copyrighted.

Id. at 759. Moreover, the Kienitz court factored against the defendants the fact that they did not need to use the particular copyrighted photograph "when so many noncopyrighted alternatives (including snapshots they could have taken themselves) were available."[11] Id. In this case, however, Goldsmith states that Warhol was required to use her photograph in his works.[12]

The Second Circuit Court of Appeals reached a similar result in Cariou, which involved a defendant-artist using the plaintiff's photographs as a source for several of the defendant's works. 714 F.3d at 699-704. The court held that although the defendant "used key portions" of the plaintiff's photographs – or sometimes, entire photographs – in creating his artwork, the third factor weighed "heavily" in the defendant's favor because the defendant "transformed those photographs into something new and different." Id. at 710.[13]

_____

[11] The court ultimately held that such "lazy appropriat[ion]" was "not enough to offset the fact that, by the time defendants were done, almost none of the copyrighted work remained." Kienitz, 766 F.3d at 759-60.

[12] Goldsmith's Br. at 35; see Goldsmith's Opp. at 23 ("Warhol could not have achieved the same effect by a random snapshot and certainly not without referencing the Goldsmith Photo, in contrast to the low resolution website-posted snapshot in Kienitz.").

[13] The Court of Appeals determined that twenty-five artworks by the defendant were transformative and summary judgment should be granted on the basis of fair use. The Court of Appeals remanded for consideration by the District Court whether five works were protected by fair use because the changes from the original photographs were "relatively minimal." Cariou, 714 F. 3d at 711.

This case is similar to both Kienitz and Cariou. The Goldsmith Prince Photograph contains several protectible elements. "Elements of originality in a photograph may include posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved." Rogers, 960 F.2d at 307. Goldsmith has presented evidence demonstrating that she incorporated these elements into her artistic process when shooting Prince, and they are apparent in her photograph. However, these creative elements are almost entirely absent from the Prince Series works.

All but one of Warhol's works include only Prince's head and a small portion of his neckline; Goldsmith's photograph captures much of Prince's torso. The sharp contours of Prince's face that Goldsmith emphasized in her photograph are softened in some Prince Series works and traced over or shaded in others. Moreover, the three-dimensional effect in the photograph, produced by the background and lighting that Goldsmith chose, was removed by Warhol resulting in a flat, two-dimensional and mask-like figure of Prince's head. And in the majority of his Prince Series works, Warhol traded Goldsmith's white background for a loudly colored background. Indeed, unlike Goldsmith's photograph, most of Warhol's works are entirely in color, and the works that are black and white are especially crude and the

creative features of the Goldsmith Prince Photograph are especially absent. Ultimately, Warhol's alterations wash away the vulnerability and humanity Prince expresses in Goldsmith's photograph and Warhol instead presents Prince as a larger-than-life icon.

Although the pose and angle of Prince's head were copied from the photograph to the Prince Series, "such a pose cannot be copyrighted" because copyright law "protect[s] only plaintiff's particular photographic expression of [a] pose[] and not the underlying ideas therefor." See Kate Spade, 388 F. Supp. 2d at 393 (quotation marks omitted). And several non-Goldsmith photographs capture Prince in a similar pose, indicating that the pose is not particularly original. See AWF 56.1 Stmt. ¶ 96. Finally, to the extent that Prince's facial features remain in Warhol's works, the features themselves are not copyrightable, see Mattel, 365 F.3d at 136, and the distinctive (and therefore copyrightable) way in which Goldsmith presented those features is absent from the Prince Series works. Each Prince Series work contains little, if any, of the copyrightable elements of the Goldsmith Prince Photograph.[14]

---

[14] The two primary cases that Goldsmith relies upon to support her argument to the contrary are distinguishable. Both are unpublished decisions from the Central District of California involving a defendant's copying and then altering the plaintiff's photograph to create a new work based primarily on the original photograph. The court in each case found against the defendant in its fair use analysis. In the first case, Friedman v. Guetta, the defendant admitted to making only "small alterations" to a digital copy

In short, although Warhol initially used Prince's head and neckline as they appear in the Goldsmith Prince Photograph, Warhol removed nearly all the photograph's protectible elements in creating the Prince Series. In doing so, Warhol transformed Goldsmith's work "into something new and different and, as a result, this factor weighs heavily" in AWF's favor. See Cariou, 714 F.3d at 710.

### D.

The final fair use factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). "This inquiry must take account not only of harm to the original but also of harm to the market for derivative works." Harper & Row, 471 U.S. at 568. However, "[t]he market for potential derivative uses includes only those that creators of original works would in general develop or license others to develop." Campbell, 510 U.S. at 592.

---

of the plaintiff's photograph, and the defendant "[did] not offer[] a transformative alternative use" of the photograph despite copying "the heart" of the photograph. No. CV10-14, 2011 WL 3510890, at *5-7 (C.D. Cal. May 27, 2011). And in the second case, Morris v. Guetta, it was "not apparent" that the defendants' works "add[ed] something new, ha[d] a further purpose or [were] of a different character due to a new expression, meaning, or message." No. CV12-684, 2013 WL 440127, at *8 (C.D. Cal. Feb. 4, 2013). The Morris court also weighed against the defendants the fact that they did not provide "a significant justification" for using the plaintiff's photograph in particular for "effecting [their] vision." Id. at *8-9.

Warhol, on the other hand, made significant alterations to the Goldsmith Prince Photograph to create transformative works of a character that is different from the original.

The application of the fourth factor focuses primarily on whether the secondary use "usurps" the market or derivative markets for the original work. Cariou, 714 F.3d at 708. An accused infringer might "usurp[] the market for copyrighted works, including the derivative market, where the infringer's target audience and the nature of the infringing content is the same as the original." Id. at 709. Thus, at bottom, the fair use analysis "is concerned with only one type of economic injury to a copyright holder: the harm that results because the secondary use serves as a substitute for the original work." Authors Guild, Inc. v. HathiTrust, 755 F.3d 87, 99 (2d Cir. 2014). "The more transformative the secondary use, the less likelihood that the secondary use substitutes for the original." Castle Rock Entm't, 150 F.3d at 145; see Campbell, 510 U.S. at 591.

Goldsmith wisely does not contend that Warhol's work has usurped her market for direct sales of the Goldsmith Prince Photograph. It is plain that the markets for a Warhol and for a Goldsmith fine-art or other type of print are different. Rather, Goldsmith argues that the Prince Series has harmed her licensing markets. She maintains that "[h]er licensing markets overlap the same markets into which AWF has licensed Warhol's imagery for editorial and commercial uses, including magazines . . . [and] music album covers." Goldsmith's Br. at 36-37 (citation omitted). Even though Goldsmith has not editioned or licensed

any of the Prince photographs from her December 3, 1981 shoot
apart from the 1984 Vanity Fair artist's reference, she claims
that "she has reserved" those rights "for the future when she
expects the value of th[ose] photograph[s] to increase." Id. at
37.

Goldsmith's evidence and arguments do not show that the
Prince Series works are market substitutes for her photograph.
She provides no reason to conclude that potential licensees will
view Warhol's Prince Series, consisting of stylized works
manifesting a uniquely Warhol aesthetic, as a substitute for her
intimate and realistic photograph of Prince. Although Goldsmith
points out that her photographs and Warhol's works have both
appeared in magazines and on album covers, this does not suggest
that a magazine or record company would license a transformative
Warhol work in lieu of a realistic Goldsmith photograph.
Moreover, Goldsmith does not specify the types of magazines and
album covers on which she and Warhol appear, and whether they
are similar. Put simply, the licensing market for Warhol prints
is for "Warhols." This market is distinct from the licensing
market for photographs like Goldsmith's – a market which
Goldsmith has not even attempted to enter into with her Prince
photographs.[15]

---

[15] Cf. Cariou, 714 F.3d at 709 ("[The defendant-artist's] audience is
very different from [the plaintiff-photographer's], and there is no evidence
that [the defendant's] work ever touched – much less usurped – either the

The evidence shows that the Prince Series works are not market substitutes that have harmed – or have the potential to harm – Goldsmith. The final fair use factor accordingly favors AWF.

*       *       *

The first, third, and fourth fair use factors favor AWF, and the second factor is neutral. A holistic weighing of these factors points decidedly in favor of AWF. Therefore, the Prince Series works are protected by fair use, and Goldsmith's copyright infringement claim is dismissed.[16]

**CONCLUSION**

The Court has considered all the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained

---

primary or derivative market for [the plaintiff's] work. There is nothing in the record to suggest that [the plaintiff] would ever develop or license secondary uses of his work in the vein of [the defendant's] artworks."); Blanch, 467 F.3d at 258 (noting that the secondary work "had no deleterious effect upon the potential market for or value of the copyrighted work" where the plaintiff acknowledged that she had not published or licensed her photograph).

Goldsmith points out that one collector who owned three of Warhol's works of art also bought a fine-art print of Prince from her. But as AWF persuasively argues, this does not suggest that the collector "bought the works for the same reason, perceives the works similarly, or believes the works are substitutes for each other (the fact that the collector owns both of them suggests the opposite)." AWF Opp. at 38.

[16] The Court did not rely on the report of AWF expert Dr. Thomas Crow or on the declaration of AWF fact witness Neil Printz in reaching this conclusion. Therefore, the Court need not address Goldsmith's argument that these materials cannot be considered. AWF's argument that the Court should exclude the opinions of Jeffrey Sedlik, Goldsmith's expert on derivative markets for Goldsmith's works, also need not be addressed. The fourth fair use factor favors AWF even taking Sedlik's opinions into account.

34

above, AWF's motion for summary judgment is **granted**, and Goldsmith's motion for summary judgment is **denied**. Goldsmith's copyright infringement counterclaim is **dismissed**. AWF should submit a proposed judgment by **July 8, 2019**. Goldsmith may submit any objections or counter judgment by **July 10, 2019**.

The Clerk is directed to close all pending motions.

**SO ORDERED.**

Dated:     **New York, New York**
             **July 1, 2019**

                                         **John G. Koeltl**
                        **United States District Judge**

# ADDENDUM B

## Statement of Issues on Appeal

1. Whether the district court erred in granting the Andy Warhol Foundation for the Visual Arts, Inc.'s motion for summary judgment.

Standard of review:  De novo.

2. Whether the district court erred in denying Lynn Goldsmith and Lynn Goldsmith's Ltd. motion for summary judgment and dismissing their amended counterclaim for infringement.

Standard of review:  De novo.

## Certificate of Service

I, Thomas G. Hentoff, counsel for appellants Lynn Goldsmith and Lynn Goldsmith, Ltd. and a member of the bar of this Court, hereby certify that on August 21, 2019, a copy of the foregoing Civil Appeal Pre-Argument Statement (Form C) was filed with the Clerk and served on the parties through the Court's electronic filing system.  All parties required to be served have been served.


Dated:  August 21, 2019

/s/ Thomas G. Hentoff
*Counsel for Appellants Lynn Goldsmith and Lynn Goldsmith, Ltd.*