## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

### MOTION INFORMATION STATEMENT

**Docket Number(s):** 19-2420-cv                         _____ Caption [use short title] _____

**Motion for:** Leave to file brief of amici curiae

60 Intellectual Property Scholars in support of petition

for panel rehearing and rehearing en banc

Set forth below precise, complete statement of relief sought:

Pursuant to Federal Rule of Appellate Procedure 29(b)(2) and

(b)(3), amici curiae 60 Intellectual Property Scholars

respectfully seeks leave to file brief in support of panel

rehearing and rehearing en banc.

**The Andy Warhol Foundation v. Goldsmith**

_____

_____

**MOVING PARTY:** Amici Curiae 60 Intellectual Property Scholars   **OPPOSING PARTY:** Lynn Goldsmith, et al.

☐ Plaintiff          ☐ Defendant

☐ Appellant/Petitioner    ☐ Appellee/Respondent

**MOVING ATTORNEY:** Rebecca Tushnet      **OPPOSING ATTORNEY:** Thomas G. Hentoff

[name of attorney, with firm, address, phone number and e-mail]

Harvard Law School                    Williams & Connolly LLP

1575 Massachusetts Avenue                725 Twelfth Street, N.W.

Cambridge, MA 02138                    Washington, DC 20005

Court- Judge/ Agency appealed from: United States District Court for the Southern District of New York, No. 17-cv-02532, Hon. John G. Kroll

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes  ☐ No (explain):_____
_____

Opposing counsel's position on motion:
☑ Unopposed  ☐ Opposed  ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes  ☑ No  ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has this request for relief been made below?    ☐ Yes ☐ No
Has this relief been previously sought in this court?  ☐ Yes ☐ No
Requested return date and explanation of emergency: _____
_____
_____
_____
_____

Is oral argument on motion requested?  ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  ☐ Yes ☑ No  If yes, enter date:_____

**Signature of Moving Attorney:**

/s/ Rebecca Tushnet_____  **Date:** 5/5/2021_____   Service by: ☑ CM/ECF  ☐ Other [Attach proof of service]

# 19-2420-CV

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

THE ANDY WARHOL FOUNDATION FOR THE VISUAL ARTS, INC.,
*Plaintiff-Counter-Defendant-Appellee,*

v.

LYNN GOLDSMITH, LYNN GOLDSMITH, LTD.,
*Defendants-Counter-Claimants-Appellants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

**MOTION FOR LEAVE TO FILE BRIEF OF *AMICI CURIAE*
60 INTELLECTUAL PROPERTY SCHOLARS IN SUPPORT OF
PETITION FOR PANEL REHEARING AND REHEARING EN BANC**

---

REBECCA TUSHNET
Harvard Law School
1575 Massachusetts Avenue
*On the Brief:*                    Cambridge, MA 02138
  PAMELA SAMUELSON                 (703) 593-6759
  CHRISTINE HAIGHT FARLEY          rtushnet@law.harvard.edu

Dated: May 5, 2020                 Counsel for *Amici Curiae*

## MOTION FOR LEAVE TO FILE BRIEF OF *AMICI CURIAE*

Pursuant to Rule 29(b)(2) and (b)(3) of the Federal Rules of Appellate Procedure, *Amici Curiae* 60 Intellectual Property Scholars respectfully moves for leave to file an *amicus* brief in support of the petition for panel rehearing and rehearing en banc. All parties have consented to the filing of this brief.

*Amici Curiae* are intellectual property scholars (listed below and in the Appendix to the brief) whose sole interest in submitting the brief is to ensure the proper application of copyright fair use law. *Amici* are concerned that the Second Circuit panel decision conflicts with the U.S. Supreme Court's recent ruling in *Google LLC v. Oracle America, Inc.*, 141 S. Ct. 1183 (2021). *Google* is instructive on the application of the fair use factors; as *Amici*'s brief explains, the panel opinion conflicts with *Google* in four significant respects, consideration of which will likely be of assistance to this Court in deciding whether to grant rehearing in this case. Accordingly, *Amici Curiae* respectfully request leave to file the *amicus* brief.

Dated May 5, 2021

Respectfully submitted,

By: /s/ Rebecca Tushnet
Rebecca Tushnet
Harvard Law School
1575 Massachusetts Avenue
Cambridge, MA 02138
(703) 593-6759
rtushnet@law.harvard.edu

Counsel for *Amici Curiae*

*Amici Curiae* (university affiliations for identification purposes only):

Timothy K. Armstrong, University of Cincinnati College of Law

Clark D. Asay, Brigham Young University Law School

Patricia Aufderheide, American University School of Communication

Ann Bartow, University of New Hampshire School of Law

Emily T. Behzadi, California Western School of Law

Sonya G. Bonneau, Georgetown University Law Center

Nina I. Brown, Syracuse University S.I. Newhouse School of Public
    Communications

Dan L. Burk, University of California, Irvine, School of Law

Michael W. Carroll, American University Washington College of Law

Bryan H. Choi, The Ohio State University Moritz College of Law

Julie E. Cohen, Georgetown University Law Center

Ben Depoorter, University of California, Hastings College of the Law

Graeme B. Dinwoodie, IIT Chicago-Kent College of Law

Stacey Dogan, Boston University School of Law

Dave Fagundes, University of Houston Law Center

Christine Haight Farley, American University Washington College of Law

Sean Michael Fiil-Flynn, American University Washington College of Law

Jeanne Fromer, New York University School of Law

Brian L. Frye, University of Kentucky College of Law

William T. Gallagher, Golden Gate University School of Law

Deborah R. Gerhardt, University of North Carolina School of Law

Jim Gibson, University of Richmond School of Law

Andrew Gilden, Willamette University College of Law

Eric Goldman, Santa Clara University School of Law

James Grimmelmann, Cornell Tech and Cornell Law School

Leah Chan Grinvald, Suffolk University Law School

Robert A. Heverly, Albany Law School

Laura A. Heymann, William & Mary Law School

Peter Jaszi, American University Washington College of Law (Emeritus)

Peter Karol, New England Law – Boston

Kathryn Kleiman, American University Washington College of Law

Raymond Ku, Case Western Reserve University School of Law

Amy Landers, Drexel University Thomas R. Kline School of Law

Stacey M. Lantagne, The University of Mississippi School of Law

Edward Lee, IIT Chicago-Kent College of Law

Jack Lerner, University of California, Irvine, School of Law

Yvette Joy Liebesman, Saint Louis University School of Law

Joseph P. Liu, Boston College Law School

Glynn Lunney, Texas A&M University School of Law

Michael Madison, University of Pittsburgh School of Law

Phil Malone, Stanford Law School

Timothy J. McFarlin, Samford University Cumberland School of Law

Mark P. McKenna, Notre Dame Law School

Hiram Melendez-Juarbe, University of Puerto Rico Law School

Aaron Perzanowski, Case Western Reserve University School of Law

Victoria F. Phillips, American University Washington College of Law

Amanda Reid, University of North Carolina at Chapel Hill Hussman School of
Journalism and Media

Blake E. Reid, Colorado Law

Betsy Rosenblatt, University of Tulsa College of Law

Jennifer E. Rothman, Loyola Law School, Loyola Marymount University

Zahr Said, University of Washington School of Law

Pamela Samuelson, University of California, Berkeley, School of Law

Joshua D. Sarnoff, DePaul University College of Law

Jason M. Schultz, New York University School of Law

Jessica Silbey, Boston University School of Law

Aram Sinnreich, American University School of Communication

Xiyin Tang, University of California, Los Angeles, School of Law

Rebecca Tushnet, Harvard Law School

Jacob Victor, Albany Law School

Peter K. Yu, Texas A&M University School of Law

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF on May 5, 2021. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: May 5, 2021

(s) Rebecca Tushnet
Rebecca Tushnet
Harvard Law School
1575 Massachusetts Avenue
Cambridge, MA 02138
(703) 593-6759
rtushnet@law.harvard.edu

Counsel for *Amici Curiae*

# 19-2420-CV

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

THE ANDY WARHOL FOUNDATION FOR THE VISUAL ARTS, INC.,
*Plaintiff-Counter-Defendant-Appellee,*

v.

LYNN GOLDSMITH, LYNN GOLDSMITH, LTD.,
*Defendants-Counter-Claimants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

**BRIEF OF *AMICI CURIAE* 60 INTELLECTUAL PROPERTY SCHOLARS
IN SUPPORT OF PETITION FOR PANEL REHEARING AND
REHEARING EN BANC**

REBECCA TUSHNET
Harvard Law School
1575 Massachusetts Avenue
Cambridge, MA 02138
(703) 593-6759
rtushnet@law.harvard.edu

*On the Brief:*
  PAMELA SAMUELSON
  CHRISTINE HAIGHT FARLEY

Dated: April 30, 2020

Counsel for *Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amici curiae* 60 Intellectual Property Scholars each state that they are individuals.

Dated April 30, 2021

By: /s/ Rebecca Tushnet
Rebecca Tushnet
Counsel for *Amici Curiae*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................... iii

INTEREST OF *AMICI CURIAE* ..............................................................1

SUMMARY OF ARGUMENT ...............................................................1

ARGUMENT ....................................................................................3

   I.   THE PANEL OPINION CONFLICTS WITH *GOOGLE*'S HOLDING ON TRANSFORMATIVE PURPOSES. .......................................................3

   II.   *GOOGLE* REQUIRES GREATER CONSIDERATION OF THE RELATIONSHIPS AMONG THE FAIR USE FACTORS. ........................7

   III.   *GOOGLE* CONFIRMS THAT FAIR USE LIMITS THE SCOPE OF THE DERIVATIVE WORK RIGHT. ..........................................................8

   IV.   *GOOGLE* REQUIRES AN ULTIMATE FOCUS ON PUBLIC ACCESS TO NEW WORKS IN THE FOURTH FACTOR. .......................................9

CONCLUSION ...............................................................................11

APPENDIX: List of *Amici* ...................................................... A-1

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*,
  992 F.3d 99 (2d Cir. 2021) ...........................................................*passim*

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994).....................................................................3, 5, 9

*Feist Publications, Inc. v. Rural Telephone Service. Co.*,
  499 U.S. 340 (1991).............................................................................4

*Google LLC v. Oracle America, Inc.*,
  141 S. Ct. 1183 (2021).................................................................*passim*

*Hotaling v. Church of Jesus Christ of Latter-Day Saints*,
  118 F.3d 199 (4th Cir. 1997) ............................................................10

*Mattel, Inc. v. Walking Mountain Productions*,
  353 F.3d 792 (9th Cir. 2003) ......................................................... 5-6

*MCA, INC. v. Wilson*,
  677 F.2d 180 (2d Cir. 1981) ............................................................11

## CONSTITUTIONAL PROVISIONS

U.S. Const. Art. I, § 8, cl. 8.........................................................................4

## STATUTES

17 U.S.C. § 107 .........................................................................................8

## OTHER AUTHORITIES

Pamela Samuelson, *The Quest for a Sound Conception of Copyright's Derivative Work Right*, 101 Geo. L.J. 1505 (2013)................................................9

Melville B. Nimmer & David Nimmer,
Nimmer on Copyright (2019) ...............................................................4

# INTEREST OF *AMICI CURIAE*[1]

*Amici curiae* are intellectual property scholars (listed in Appendix A) concerned that a recent Second Circuit panel decision conflicts with the U.S. Supreme Court's ruling in *Google LLC v. Oracle America, Inc.*, 141 S. Ct. 1183 (2021). *Amici*'s sole interest is to ensure the proper application of copyright fair use law.

# SUMMARY OF ARGUMENT

*Amici* urge the Court to grant the Warhol Foundation's petition for a panel rehearing and rehearing en banc of *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 992 F.3d 99 (2d Cir. 2021), because it conflicts with the U.S. Supreme Court's *Google v. Oracle* ruling in four significant respects.

First and foremost, the panel opinion conflicts with *Google*'s broad conception of what counts as a transformative purpose. The panel concluded that the Warhol prints were non-transformative as a matter of law because they did not have a "fundamentally different and new" artistic purpose from Goldsmith's photo as a work of visual art. The *Google* Court rejected a similar claim that Google's use of the Java declarations served the same intrinsic purpose in the Android software as

---

[1] Pursuant to Fed. R. App. P. 29(c)(5) and Second Circuit Local Rule 29.1(b), counsel for *amici* represent that they authored this brief in its entirety and that none of the parties or their counsel, nor any other person or entity other than *amici* or their counsel, made a monetary contribution intended to fund the preparation or submission of this brief. All parties consented to the filing of the brief.

Sun/Oracle's uses. Under *Google*, Warhol's use of Goldsmith's photograph was transformative because it added something new and conveyed a different message.

Second, the *Warhol* panel failed to give due weight to this transformativeness in assessing other fair use factors, as *Google* directs.

Third, the *Warhol* panel posits that the derivative work right limits what can constitute fair use. But the Court in *Google*, following the plain language of the statute, recognized fair use as a limitation on all of copyright's exclusive rights.

Fourth, in assessing the harm factor, *Google* directed courts to balance possible losses from the challenged use with public benefits of copying in light of copyright's basic objective of promoting ongoing creativity. The *Warhol* panel considered only the potential harm to Goldsmith's licensing market and ignored the benefit the public receives from the new art created by Andy Warhol.

Although *Google* concerned computer software, the Court's opinion is instructive on the application of the fair use factors generally. The Court focused on the productive use of the copyrighted software considering not only Google's purpose in using the work, but also the character of that use with a view toward any resulting benefit to the public.

**ARGUMENT**

## I. THE PANEL OPINION CONFLICTS WITH *GOOGLE*'S HOLDING ON TRANSFORMATIVE PURPOSES.

The *Warhol* panel took an extremely narrow and, in light of *Google*, erroneous view of what counts as a transformative purpose. *Google* reaffirmed the definition of transformative purpose from *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994): whether the second use supersedes demand for the original or "'adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.'" *Google*, 141 S. Ct. at 1202-03 (quoting *Campbell*, 510 U.S. at 579). Warhol's Prince series plainly adds something new and conveys a different message than Goldsmith's photograph. Under *Campbell* and *Google*, the Warhol works are transformative as a matter of law.

The panel concluded that the Warhol works were non-transformative as a matter of law because they "share the same overarching purpose" as Goldsmith's photograph in being works of visual art without having a "'fundamentally different and new' artistic purpose and character." *Warhol*, 992 F.3d at 112, 114. The Court in *Google* rejected Oracle's similarly superficial argument that Google's use could not be transformative because it had the same purpose as Sun/Oracle's use. Instead, the Court found transformative purpose even though "Google copied portions of the Sun Java API … for the same reason that Sun created those portions, namely, to enable programmers to call up implementing programs that would accomplish particular

3

tasks."[2] *Google*, 141 S. Ct. at 1203. However, the Court stated that "to stop here would severely limit the scope of fair use." *Id.*

After stating that a court "must go further" in examining the defendant's purpose, the Court proceeded to consider the context of Google's use and concluded that Google's purpose in using the Sun Java API was transformative because it enabled the "creat[ion of] new products." *Id.* This deeper analysis of defendant's use enabled the Court to consider whether the "use was consistent with that creative 'progress' that is the basic constitutional objective of copyright itself." *Id.* (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) (quoting U.S. Const., Art. I, § 8, cl. 8)). The *Warhol* panel failed to do this.

The Court in *Google* demonstrated how to "go further" in cases that do not involve obvious criticism or comment: Courts should consider whether the context of a reuse is consistent with the Constitution's "Progress" clause, including an examination of the creative environment in which the reuse participated. 141 S. Ct. at 1203. In sharp contrast, the panel confined itself to an examination of the "work itself." It invented a new bright-line rule: "the secondary work itself must reasonably be perceived as embodying an entirely distinct artistic purpose, one that conveys a

---

[2]   The Court illustrated its broad conception of transformativeness with the example of a painting that "precisely" replicated a copyrighted logo "to make a comment about consumerism." *Google*, 141 S. Ct. at 1203 (citing 4 Nimmer on Copyright § 13.05[A][1][b]).

'new meaning or message' entirely separate from its source material." *Warhol*, 992 F.3d at 113. This is inconsistent with *Google*.

The *Warhol* panel's new rule not only conflicts with *Google*; it also misconstrues *Campbell*. The panel recognized that *Campbell* directs courts to consider whether transformative purpose may "reasonably be perceived," *id*. at 110, but failed to consider whether a legitimate creative community exists that would perceive transformative meaning in the new work. *Campbell* did not address whether the Court itself perceived any transformativeness. Indeed, the Court was at best neutral as to whether the parody actually succeeded among the Justices. Instead, its use of the "may reasonably be perceived" standard acknowledged that there may be multiple interpretations of an accused work. *Campbell*, 510 U.S. at 582-83. To be consistent with *Google* and *Campbell*, judges should consider the views of reasonable interpretive communities.

To require an artwork to have a fixed meaning by asking what it means in the absence of contextual information (as if that task could actually be accomplished) would be to hold fair use hostage to a particular group's view of how meaning is made. *Cf. Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 801 (9th Cir. 2003):

> While individuals may disagree on the success or extent of a parody, parodic elements in a work will often justify fair use protection. …
> Allowing majorities to determine whether a work is a parody would be

> greatly at odds with the purpose of the fair use exception and the Copyright Act. (citations omitted)

The message of an artwork will rarely be unitary. Were copyright law to require a unitary message, it would fail its constitutional mandate to promote progress.

The *Warhol* panel abjured consideration of "the stated or perceived intent of the artist," as well as "the meaning or impression that a critic — or for that matter, a judge — draws from the work." *Warhol*, 992 F.3d at 113-14. It examined "how the works may reasonably be perceived" entirely in the abstract, sidelining any other audience for these works as unreasonable. This approach is wholly inconsistent with *Google*, where the Court relied on both the stated intent of Google and the understanding of third parties, including *amici* and witnesses, to evaluate the purpose of the use. *Google*, 141 S. Ct. at 1203-04.

The *Warhol* panel instead devised a new conception of what counts as transformative purpose. Under it, a "judge must examine whether the secondary work's use of its source material is in service of a 'fundamentally different and new' artistic purpose and character, such that the secondary work *stands apart* from the 'raw material' used to create it." *Warhol*, 992 F.3d at 114 (emphasis added). Applying this test, the panel concluded that "the Goldsmith Photograph remains the *recognizable* foundation upon which the Prince Series is built." *Id.* at 115 (emphasis added). This test requires the secondary work to visually stand apart from the original such that the original is no longer recognizable as its foundation. Stated

more simply, the secondary work must be substantially dissimilar from the original. If that were the case, however, the defendant would not need to avail itself of § 107, because the court would have already found that it did not violate any of the rights of § 106 for want of substantial similarity. The panel's "recognizability" test is manifestly contrary to *Google* and *Campbell*, both of which involved readily recognizable copying. Nor did the copying in either case "draw from numerous sources," which the panel suggested distinguished prior transformativeness cases. *Warhol*, 992 F.3d at 113.

In addition, the panel emphasized that Warhol made money on his art — that is, the commerciality of the use. But *Google* reminds us that "[t]here is no doubt that a finding that copying was not commercial in nature tips the scales in favor of fair use. But the inverse is not necessarily true, as many common fair uses are indisputably commercial." 141 S. Ct. at 1204.

## II. *GOOGLE* REQUIRES GREATER CONSIDERATION OF THE RELATIONSHIPS AMONG THE FAIR USE FACTORS.

*Google* directs courts to give considerable weight to transformativeness when assessing other fair use factors, which the *Warhol* panel failed to do. In assessing the nature of the work factor, the panel characterized Goldsmith's photograph as creative and unpublished, concluding that this factor favored Goldsmith. 992 F.3d at 117. Had the panel assessed this factor in light of transformativeness, it would have regarded this factor as more neutral because Goldsmith's agency granted a license to

Vanity Fair to allow use of the photo as an artist reference — that is, for its utility in depicting Prince — directly implicating Warhol's transformative purpose.

The Court in *Google* observed that "[t]he 'substantiality' factor will generally weigh in favor of fair use where … the amount of copying was tethered to a valid, and transformative, purpose." 141 S. Ct. at 1205. Having erroneously denied that Warhol's purpose was transformative, the *Warhol* panel compounded this error by concluding that Warhol's copying was too substantial merely because it was "instantly recognizable" as similar to the Goldsmith photo. *Warhol*, 992 F.3d at 119.

## III. *GOOGLE* CONFIRMS THAT FAIR USE LIMITS THE SCOPE OF THE DERIVATIVE WORK RIGHT.

The *Warhol* panel asserted that a work could not be transformative if it implicated the derivative work right. *Id*. at 111. *Google* and the statute set out § 107's lexical priority: "*Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work … is not an infringement of copyright.*" 17 U.S.C. § 107 (emphasis added).

On this point, the *Warhol* panel made the same mistake as Oracle. Google's verbatim copying for the same purpose as Sun/Oracle must, Oracle said, be unfair because otherwise "fair use would swallow the derivative-work right." Brief for Respondent at 40, *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183 (2021) (No. 18-956). It further charged that "Google copied Oracle's code to create a nontransformative derivative: a sequel that adapted Oracle's software for an

improved generation of devices." *Id*. at 41. Tellingly, the Court recognized that fair use is a limitation on all the exclusive rights. *Google*, 141 S. Ct. at 1199; *see also Campbell*, 510 U.S. at 592-93 (analyzing derivative work right and transformative fair use as alternatives).

The derivative work right has an important role in the copyright system, but that role is not to shrink fair use. *See* Pamela Samuelson, *The Quest for a Sound Conception of Copyright's Derivative Work Right*, 101 Geo. L.J. 1505, 1538 (2013) (describing fair use as important limit on derivative work right).

## IV. *GOOGLE* REQUIRES AN ULTIMATE FOCUS ON PUBLIC ACCESS TO NEW WORKS IN THE FOURTH FACTOR.

*Google* observed that fair use "can focus on the legitimate need to provide incentives to produce copyrighted material while examining the extent to which yet further protection creates unrelated or illegitimate harms in other markets or to the development of other products." 141 S. Ct. at 1198. The assessment needs to be holistic in character.

In discussing the harm factor in transformative purpose cases, *Google* directs courts to take into account possible public benefits from the challenged copying and also the risks that enforcing copyright may pose for interfering with copyright's objective of promoting ongoing creativity. *Id*. at 1206. The Court characterized transformative work as "something new and important." *Id*. at 1203. Warhol's

Prince series unquestionably has cultural importance. They are works of art whose creation benefits the public, which has enjoyed wide access to them.

If those works are deemed infringements, museums, galleries, libraries with books containing reproductions of the works, and all others would be automatically converted into infringers, with no ability to rely on § 109 first sale limitations insofar as they do not own authorized copies. *See Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199 (4th Cir. 1997) (finding infringement where a copy was made available to the public). Even if Goldsmith chooses not to deprive the public of access to the works, these entities may be liable for past damages. This is inherently in tension with *Google*'s focus on promoting progress through increasing public availability of creative works.

The *Warhol* panel erred by not balancing public costs and private benefits, and relatedly by overstating those benefits. Goldsmith had not otherwise licensed the photograph at issue, 992 F.3d at 121, and the licensing was more than three decades ago, *id*. at 106, but the panel insisted that allowing reuse of Warhol's work would substantially harm Goldsmith's market. *Id*. at 121-22. This highly speculative approach to assessing potential market harms is contrary to *Google*, which was focused on existing or reasonably foreseeable markets for the uses in suit, not for uses Google didn't make. 141 S. Ct. at 1206-08. Just as programmers wanted Google's new operating environment because of what Google had added, the public

wanted Warhol's artwork, and they wanted it because of the commentary Warhol had added.

The Court recognized that "[c]onsideration of this factor … can require a court to consider the amount of money that the copyright owner might lose" and that "[t]hose losses normally conflict with copyright's basic objective: providing authors with exclusive rights that will spur creative expression." *Id*. at 1206. But the Court cautioned that "a potential loss of revenue is not the whole story." *Id*. It went on to weigh the evidence of potential loss against "the risk of creativity-related harms to the public." *Id*. at 1208.

The *Warhol* panel erred in failing to "take into account the public benefits the copying will likely produce," including "copyright's concern for the creative production of new expression," as directed by *Google*. *Id*. at 1206. These benefits should be evaluated as "comparatively important, or unimportant, when compared with dollar amounts likely lost (taking into account as well the nature of the source of the loss)." *Id*. (citing *MCA, INC. v. Wilson*, 677 F.2d 180, 183 (2d Cir. 1981).

## CONCLUSION

For the foregoing reasons, rehearing should be granted.

Respectfully submitted,

Dated: April 30, 2021

/s/ Rebecca Tushnet
Rebecca Tushnet
Harvard Law School
1575 Massachusetts Avenue

Cambridge, MA 02138
(703) 593-6759
rtushnet@law.harvard.edu

Counsel for *Amici Curiae*

# APPENDIX

## List of *Amici*

*University affiliations for identification purposes only*

Timothy K. Armstrong
University of Cincinnati College of Law

Clark D. Asay
Brigham Young University Law School

Patricia Aufderheide
American University School of Communication

Ann Bartow
University of New Hampshire School of Law

Emily T. Behzadi
California Western School of Law

Sonya G. Bonneau
Georgetown University Law Center

Nina I. Brown
Syracuse University S.I. Newhouse School of Public Communications

Dan L. Burk
University of California, Irvine, School of Law

Michael W. Carroll
American University Washington College of Law

Bryan H. Choi
The Ohio State University Moritz College of Law

Julie E. Cohen
Georgetown University Law Center

Ben Depoorter
University of California, Hastings College of the Law

Graeme B. Dinwoodie
IIT Chicago-Kent College of Law

Stacey Dogan
Boston University School of Law

Dave Fagundes
University of Houston Law Center

Christine Haight Farley
American University Washington College of Law

Sean Michael Fiil-Flynn
American University Washington College of Law

Jeanne Fromer
New York University School of Law

Brian L. Frye
University of Kentucky College of Law

William T. Gallagher
Golden Gate University School of Law

Deborah R. Gerhardt
University of North Carolina School of Law

Jim Gibson
University of Richmond School of Law

Andrew Gilden
Willamette University College of Law

Eric Goldman
Santa Clara University School of Law

James Grimmelmann
Cornell Tech and Cornell Law School

Leah Chan Grinvald
Suffolk University Law School

Robert A. Heverly
Albany Law School

Laura A. Heymann
William & Mary Law School

Peter Jaszi
American University Washington College of Law (Emeritus)

Peter Karol
New England Law – Boston

Kathryn Kleiman
American University Washington College of Law

Raymond Ku
Case Western Reserve University School of Law

Amy Landers
Drexel University Thomas R. Kline School of Law

Stacey M. Lantagne
The University of Mississippi School of Law

Edward Lee
IIT Chicago-Kent College of Law

Jack Lerner
University of California, Irvine, School of Law

Yvette Joy Liebesman
Saint Louis University School of Law

Joseph P. Liu
Boston College Law School

Glynn Lunney
Texas A&M University School of Law

Michael Madison
University of Pittsburgh School of Law

Phil Malone
Stanford Law School

Timothy J. McFarlin
Samford University Cumberland School of Law

Mark P. McKenna
Notre Dame Law School

Hiram Melendez-Juarbe
University of Puerto Rico Law School

Aaron Perzanowski
Case Western Reserve University School of Law

Victoria F. Phillips
American University Washington College of Law

Amanda Reid
University of North Carolina at Chapel Hill Hussman School of Journalism and Media

Blake E. Reid
Colorado Law

Betsy Rosenblatt
University of Tulsa College of Law

Jennifer E. Rothman
Loyola Law School, Loyola Marymount University

Zahr Said
University of Washington School of Law

Pamela Samuelson
University of California, Berkeley, School of Law

Joshua D. Sarnoff
DePaul University College of Law

Jason M. Schultz
New York University School of Law

Jessica Silbey
Boston University School of Law

Aram Sinnreich
American University School of Communication

Xiyin Tang
University of California, Los Angeles, School of Law

Rebecca Tushnet
Harvard Law School

Jacob Victor
Albany Law School

Peter K. Yu
Texas A&M University School of Law

## CERTIFICATE OF COMPLIANCE

Pursuant to the Fed. R. App. P. 32(g), I hereby certify that:

This brief complies with the type volume limitations of Second Circuit Local Rule 29.1(c) because it contains 2,598 words as calculated by the word count feature of Microsoft Word, exclusive of the sections exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirement of Fed. R. App. P. 32(a)(5)(A) and (a)(6) because it uses 14-point proportionally spaced Times New Roman font.

Dated: April 30, 2021

(s) Rebecca Tushnet
Rebecca Tushnet
Harvard Law School
1575 Massachusetts Avenue
Cambridge, MA 02138
(703) 593-6759
rtushnet@law.harvard.edu

Counsel for *Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Brief of *Amici Curiae* 60 Intellectual Property Scholars in Support of Petition for Panel Rehearing and Rehearing En Banc with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF on April 30, 2021. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: April 30, 2021

(s) Rebecca Tushnet
Rebecca Tushnet
Harvard Law School
1575 Massachusetts Avenue
Cambridge, MA 02138
(703) 593-6759
rtushnet@law.harvard.edu

Counsel for *Amici Curiae*